Filed 1/17/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>KARRE MULLINS et al.,<br><br>        Defendants and Appellants. | C079295<br><br>(Super. Ct. No. 14F02328) |

APPEAL from a judgment of the Superior Court of Sacramento County, Thadd A. Blizzard, Judge.  Affirmed as modified.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant Karre Mullins.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant Arturo Russell.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, Jeffrey Grant, and A. Kay Lauterbach, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendants Karre Mullins and Arturo Russell were convicted by jury of robbery involving bank customers at ATM's. Defendant Mullins was also convicted on a count of conspiracy to commit petty theft. Sentenced to determinate terms, defendants appeal. On appeal, they argue: (1) the evidence was insufficient to support robbery convictions, (2) the existence of an identity theft statute precluded convictions for robbery because the identity theft statute is more specific, and (3) the trial court improperly used argumentative language to instruct the jury on robbery. Additionally, defendant Mullins argues: (4) the trial court abused its discretion by sentencing on the conspiracy conviction as a felony rather than as a misdemeanor. And defendant Russell argues: (5) the sentencing minute order and abstract of judgment fail to properly reflect the sentence imposed. We find merit only in the last contention. We therefore affirm and direct correction of the sentencing minute order and abstract of judgment.

BACKGROUND

Because defendants do not challenge evidence concerning their identity, we do not recount identity evidence.

To use a Bank of America ATM, the customer must put the ATM card into the machine and input the personal identification number (PIN). After the customer inputs the number, the card is returned to the customer before a transaction (deposit, withdrawal, and so on) is begun. After completing a transaction, the ATM asks whether the customer is finished or would like another transaction. If the customer chooses to begin another transaction, the customer must input the PIN again but need not reinsert the ATM card.

Defendants Mullins and Russell are both young men. Defendant Mullins is six feet tall and weighs 150 pounds. Defendant Russell is six feet tall and weighs 190 pounds.

On March 9, 2014, before the crimes in this case, Hayward police officers responded to a report of suspicious activity at the ATM's at a branch of Bank of America. Defendants saw the officers and split up. Defendant Mullins discarded a list of ATM's in

2

the Hayward area and an ATM receipt. Both defendants were apprehended. Defendant Mullins had $2,360 in his possession, and defendant Russell had $745. Neither of them had a Bank of America ATM card.

*Count One—Robbery of Sonhai Nguyen*

At the time of trial, Sonhai Nguyen was 63 years old, about five feet, five inches tall, and weighed approximately 170 pounds. At trial, he testified through an interpreter.

On March 29, 2014, Sonhai went to a Bank of America branch located on Del Paso Boulevard at approximately 6:15 p.m. to deposit a $500 check through the ATM. There were two ATM's. Sonhai approached the ATM on the right while defendant Mullins stood in front of the ATM on the left. Defendant Mullins was punching buttons on the ATM nonstop, like he was playing a video game.

Sonhai noticed defendant Russell behind him and to the right.

Sonhai inserted his card, input his PIN, and received the card back. He then deposited his check and was ready to push the button indicating he did not want another transaction, but before he had finished at the ATM defendant Russell pushed him aside, touching Sonhai's arm very strongly, and took Sonhai's place in front of the ATM. Perceiving that the situation was dangerous, Sonhai ran back to his car in fear. He was afraid to confront the men.

About $2,000 was taken from Sonhai Nguyen's bank account.

*Count Two—Robbery of Tom Nguyen*

At the time of trial, Tom Nguyen was 61 years old, five feet, four inches tall, and weighed 138 pounds. He testified through an interpreter.

On the morning of April 7, 2014, Tom went to the Florin branch of Bank of America to withdraw $100. There were four ATM's, and Tom approached the right-most ATM. He noticed defendant Mullins standing close to the ATM's. Defendant Russell was standing at the adjacent ATM, but was looking at the screen of the ATM that Tom was using. Tom inserted his ATM card in the machine and put in his PIN and received

3

the card back. He entered his transaction to withdraw $100, but when he noticed that defendant Russell, a bigger man, was looking at his screen he became afraid that the bigger man would hit him and take his money. When the ATM dispensed the $100, Tom took the money and jumped back. Defendant Russell immediately moved over to the ATM that Tom had been using.

After Tom jumped back, he realized he did not press the button on the ATM to indicate he was finished. He saw defendant Russell push buttons on the ATM, grab money from the machine, and put it in his pocket. Still scared, Tom ran into the bank.

In four transactions, defendant Russell took a total of $840 from Tom Nguyen's bank account.

*Count Three—Robbery of Thomas Yee (Defendant Russell only)*

At the time of trial, Thomas Yee was 51 years old, five feet, nine inches tall, and weighed approximately 270 pounds.

On April 10, 2014, Thomas went to the Del Paso Boulevard branch of Bank of America to make a deposit. There were two ATM's, but both were being used. A person finished using one of the ATM's, but defendant Russell jumped in front of Thomas to that machine. When the other ATM was vacated, Thomas approached it. Thomas put in his ATM card, entered his PIN, and retrieved his card. Thomas completed his deposit and turned to leave but realized he had not pushed the button indicating he was finished with transactions. When he turned back to do so, defendant Russell, who had been at the other ATM, was already in front of the ATM that Thomas had been using. Thomas tried to reach over to see if he had "logged off," but defendant Russell pushed his body in front of Thomas, pushed Thomas's hands away, and said he (defendant Russell) was on the machine.

Not wanting a confrontation, Thomas walked into the bank. Bank employees informed him that five withdrawals for a total of $1,000 had just been made from his account.

4

*Count Four—Conspiracy to Commit Petty Theft (Defendant Mullins only)*

On April 11, 2014, defendant Mullins went to Arden Fair Mall with an unidentified male. The two men went to the Bank of America ATM's. The unidentified male approached the ATM's, while defendant Mullins stood back. Soon, however, the two men left the ATM's and strolled through the mall. After a while, the two men returned to the Bank of America ATM's before they eventually were escorted out of the mall by security because they were violating the rules of the mall by wearing saggy pants.

Defendant Mullins was charged with conspiracy to commit robbery, but the jury convicted him, instead, of the lesser included offense of conspiracy to commit petty theft.

*Sentencing*

Convicted by jury of counts one, two, and three, defendant Russell was sentenced to the middle term of four years on count one, with a consecutive 16 months (one-third the middle term) for count two and 16 months (one-third the middle term) for count three, for a total determinate term of six years eight months.

Convicted by jury of counts one, two, and four (lesser offense of conspiracy to commit petty theft), defendant Mullins was sentenced to the lower term of three years on count one, with a consecutive 16 months (one-third the middle term) for count two and eight months (one-third the middle term) for count four, for a total determinate term of five years.

DISCUSSION

I

*Substantial Evidence*

Defendants assert the evidence was insufficient to sustain the robbery convictions. They claim: (1) the victims did not have possession of the funds because the funds were in the ATM and were owned by the bank; (2) the funds were not in the immediate presence of the victims; and (3) there was insufficient force or fear. Defendant Mullins also claims: (4) the evidence of aiding and abetting was insufficient, and (5) the evidence

5

of conspiracy was insufficient. We conclude there was sufficient evidence to convict on each of the counts.

A. *General Legal Principles*

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We reverse for lack of substantial evidence only if " 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.)

B. *Defendants' Arguments*

1. Possession of the Money

Defendants contend the victims did not have possession of the money because the bank owned the money when defendants took it. To the contrary, the victims had each accessed their accounts by inserting their ATM cards immediately prior to the robberies, which access gave the victims the right to control the money taken by defendants. Because the victims were not permitted to "finish" with the ATM by pushing the appropriate button, the victims' access and control continued through the time the money was taken from their accounts. Thus the victims were in constructive possession of the money within their accounts during the time that those accounts were accessed by defendants.

6

" 'It has been settled law for nearly a century that an essential element of the crime of robbery is that property be taken from the possession of the victim.' [Citation.] . . . [¶] . . . [N]either ownership nor physical possession is required to establish the element of possession for purposes of the robbery statute . . . ." (*People v. Scott* (2009) 45 Cal.4th 743, 749.)

There was no evidence any of the victims physically held the money taken by defendants. The money was not on their persons. Focusing on that fact, defendants argue that the money in the ATM did not belong to the victims; instead, it belonged to the bank, and the victims were merely creditors of the bank. For that view—that the money in the ATM belonged to the bank and the victims were merely creditors—there is authority. (See *Chang v. Redding Bank of Commerce* (1994) 29 Cal.App.4th 673, 681 [deposited money becomes property of bank, and bank is debtor of depositor]; *Morse v. Crocker National Bank* (1983) 142 Cal.App.3d 228, 232 [title to deposited money passes to bank].) However, the legal conclusion that the deposited money is the property of the bank does not control here because the bank gave the victims access to and the right to control the money by allowing the victims to withdraw money after inserting their ATM cards. This access and right to control amounted to possession for the purpose of the robbery statute.

As the trial court instructed the jury, "[a] person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person." (CALCRIM No. 1600.) The bank granted the victims the right to control money in the ATM, at least up to the amount withdrawn by defendants. Although the victims were not in actual possession of the money at the time they were robbed of it, they were in constructive possession of it because they used their ATM cards to gain entry to their accounts and obtained the right to control the money that was withdrawn by defendants.

7

2. Immediate Presence

A related question is whether the money was in the immediate presence of the victims. We conclude that the money was in the immediate presence of the victims because they were present and would have taken control of the money but for defendants' interference.

Under the robbery statute, property is within the "immediate presence" of a victim if, but for the perpetrator's use of force or fear, the victim would have retained possession of it. (*People v. Abilez* (2007) 41 Cal.4th 472, 507.) "The zone of immediate presence includes the area 'within which the victim could reasonably be expected to exercise some physical control over his property.' [Citations.]" (*People v. Webster* (1991) 54 Cal.3d 411, 440, quoting *People v. Bauer* (1966) 241 Cal.App.2d 632, 642.)

"The generally accepted definition of immediate presence . . . is that ' "[a] thing is in the [immediate] presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." ' [Citations.] . . . [I]mmediate presence ' "must mean at least an area within which the victim could reasonably be expected to exercise some physical control over [the] property." ' [Citation.] Under this definition, property may be found to be in the victim's immediate presence 'even though it is located in another room of the house, or in another building on [the] premises.' [Citations.]" (*People v. Hayes* (1990) 52 Cal.3d 577, 626-627.)

Here, the victims had transacted business at the ATM's and were just beginning to leave when defendants interfered with the transaction between the victims and the bank through the ATM. Each victim would have stayed and indicated they were finished or, in the alternative, taken the money dispensed from their bank accounts but for the interference of defendants. They were in " ' "an area within which [they] could reasonably be expected to exercise some physical control over [their] property." ' "

8

(*People v. Hayes, supra,* 52 Cal.3d at p. 627.) That the victims fled while defendants completed the theft does not negate the immediate presence element.

### 3. Force or Fear

Robbery is "accomplished by means of force or fear." (Pen. Code, § 211.) This element is cast in the alternative; it may be accomplished either by force or by fear.

Defendants argue that the facts establish neither force nor fear in each of the incidents. We disagree.

To establish force for the purpose of a robbery conviction, "something more is required than just that quantum of force which is necessary to accomplish the mere seizing of the property." (*People v. Morales* (1975) 49 Cal.App.3d 134, 139.) But the degree of force need only be sufficient to overcome the victim's resistance. (*People v. Clayton* (1928) 89 Cal.App. 405, 411.)

To establish fear for the purpose of a robbery conviction under the circumstances of this case, there must be evidence the victim feared defendants would injure him. (CALJIC No. 1600.) The fear is sufficient if it facilitated the defendant's taking of the property. Thus, any intimidation, even without threats, may be sufficient. (*People v. Morehead* (2011) 191 Cal.App.4th 765, 774-775.) In considering the fear element, the jury may consider factors such as the relative size of the defendant and the victim. (*People v. Brew* (1991) 2 Cal.App.4th 99, 104.)

### a. Robbery of Sonhai Nguyen (Count One)

The facts supporting defendants' conviction for robbing Sonhai Nguyen established both force and fear.

Sonhai Nguyen, at various times, said that he was nudged or shoved away from the ATM. Defendant Russell touched Sonhai's arm, cut in front of him, and prevented him from pushing the button to prevent another transaction from occurring. This force was sufficient to overcome Sonhai's resistance. Thus, force was used, which was sufficient even without a showing of fear.

9

Sonhai Nguyen was also afraid of defendants and, rather than defend his property, he fled to his car. He was smaller and older than defendants. Defendants' actions were sufficient to establish intimidation, which is conduct reasonably calculated to produce fear. (See *People v. Borra* (1932) 123 Cal.App. 482, 484.)

b.       Robbery of Tom Nguyen (Count Two)

The facts supporting defendants' conviction for robbing Tom Nguyen were sufficient to establish intimidation. He also was much older and smaller than defendants, who were both at the ATM's, and he noticed that defendant Russell was standing at the adjacent ATM but looking at the screen of the ATM that Tom was using. This intimidation produced fear in Tom sufficient to cause him to jump back after his money was dispensed. Furthermore, defendant Russell's action of moving over to the ATM that Tom had been using was reasonably calculated both to (1) prevent Tom from reaching back to the ATM and pressing the button indicating he was finished and (2) allow defendant Russell to enter the PIN he had watched Tom input. These actions were reasonably calculated to produce fear and actually produced fear.

c.       Robbery of Thomas Yee (Count Three)

From the time Thomas Yee arrived at the ATM's, defendant Russell's action were intimidating and ultimately forceful. When the person using the ATM in front of Thomas finished using it, defendant Russell jumped in front of the older and shorter victim. Thomas therefore went to another ATM. When Thomas turned to walk away after using the ATM but realized he did not indicate he was finished, defendant Russell pushed his body in front of Thomas, pushed Thomas's hands away, and said he was using the ATM. These facts support a finding of both force and fear—force in pushing Thomas's hands away so he could not finish his business at the ATM and intimidation by defendant Russell's aggressive actions meant to deter Thomas from protecting his money.

On the topic of fear, defendant Russell wishes to focus on testimony of Thomas Yee that he did not think that defendant Russell's actions made him feel bullied or

10

intimidated. However, we, and the jury, may infer fear from the circumstances even if the victim superficially claims he did not feel fear or intimidation. (*People v. Morehead, supra*, 191 Cal.App.4th at p. 775.)

4. Aiding and Abetting

Defendant Mullins claims there was insufficient evidence that he aided and abetted defendant Russell in the robberies in counts one and two. He asserts: (1) there was insufficient evidence that he actually passed on any PIN to defendant Russell after observing the victims input the number and (2) there was insufficient evidence to establish that defendant Mullins knew that defendant Russell intended to deprive the victims of their property by force or fear. The contentions are without merit.

To establish aiding and abetting, "the prosecution must show that the defendant acted 'with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' [Citation.] When the offense charged is a specific intent crime, the accomplice must 'share the specific intent of the perpetrator'; this occurs when the accomplice 'knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime.' [Citation.] Thus, [the Supreme Court] held, an aider and abettor is a person who, 'acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' [Citations.]" (*People v. Prettyman* (1996) 14 Cal.4th 248, 259, italics omitted.)

Each of these aiding and abetting elements can be inferred from the evidence in this case. However, first we note that it was unnecessary for the prosecution to establish that defendant Mullins ever passed a PIN to defendant Russell. That is not a necessary element of aiding and abetting the robberies.

11

Defendant Mullins argues there was insufficient evidence that he knew the full extent of defendant Russell's criminal purpose. To the contrary, the men went to a bank ATM, waited for much smaller, older people to approach and use the ATM, and either (or both) muscled in or pushed away the smaller person or simply intimidated the victim. The inference that defendant Mullins knew there would be force or fear used is easily and reasonably made. Even if defendant Mullins was not the person who provided force, he was there to intimidate the victims as two bigger, younger men against a smaller, older victim and thereby deprive them of their property.

> 5.    Conspiracy

Defendant Mullins also contends there was insufficient evidence to sustain the conspiracy conviction. The crux of his argument is as follows: "The only suggestion that Mullins and [the unidentified male] conspired to commit theft when they went to the mall were the facts that Mullins and Russell had appeared to cooperate in the earlier incidents at Bank of America ATM[']s and that Mullins and [the unidentified male] visited the Bank of America ATM twice during their general cruising of the mall. While this evidence suggested Mullins and [the unidentified male] agreed, a suggestion is not sufficient evidence." The argument is without merit.

"A conviction for conspiracy requires proof of four elements: (1) an agreement between two or more people, (2) who have the specific intent to agree or conspire to commit an offense, (3) the specific intent to commit that offense, and (4) an overt act committed by one or more of the parties to the agreement for the purpose of carrying out the object of the conspiracy. [Citations.]" (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1024.)

Here, there was substantial evidence defendant Mullins and the unidentified male conspired to use the same method of operation to take potential victims' money at the Bank of America ATM's in Arden Fair Mall as defendant Mullins and defendant Russell had already done on two occasions in the prior two weeks at other Bank of America

12

ATM's.  When they entered the mall, they went straight to the Bank of America ATM's and lingered there.  When no victim appeared, they strolled the mall and returned later to take up their position again at the Bank of America ATM's, which they did not leave until mall security escorted them out.  From this behavior, the jury could reasonably infer that defendant Mullins and the unidentified male had conspired to commit theft when they engaged in the same scheme used by defendant Mullins and defendant Russell on at least two occasions within two weeks before the mall incident.

II

*Identity Theft Statute*

Defendants contend their convictions for robbery cannot stand because the Legislature has enacted a more specific law proscribing the use of personal identifying information for an unlawful purpose (identity theft).  (See *In re Williamson* (1954) 43 Cal.2d 651, 654 (*Williamson*).)  We conclude that the facts of this case go beyond a simple case of identity theft and therefore justify convictions on the more serious crime of robbery.

Penal Code section 211 provides:  "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

Penal Code section 530.5, subdivision (a) provides, in pertinent part:  "Every person who willfully obtains personal identifying information [including a PIN] . . . of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense . . . ."

Defendants' argument is premised on the *Williamson* rule, which provides "if a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute.  In effect, the special statute is interpreted as creating an exception to the general statute

13

for conduct that otherwise could be prosecuted under either statute." (*People v. Murphy* (2011) 52 Cal.4th 81, 86.)  The *Williamson* rule "applies when (1) 'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute.' " (*Ibid.*)  According to defendants, because section 530.5, subdivision (a) is a specific statute that criminalizes identity theft, they cannot be convicted of robbery for the same conduct.  We disagree.

Defendants' argument fails under both applications of the *Williamson* rule.  First, each element of the robbery statute does not correspond to an element of the identity theft statute because the robbery statute requires force or fear to be used and the identity statute does not so require.  And second, violations of the identity theft statute will not commonly result in violation of the robbery statute for the same reason:  the robbery statute requires proof that force or fear was used.

III

*Jury Instructions*

At the prosecutor's request, the trial court modified the standard instruction on robbery (CALCRIM No. 1600) by adding guidance to the jury on the matters of force and immediate presence.  Defendants contend the added language was argumentative and deprived them of due process and a fair trial.  We conclude the added language was not argumentative and, in any event, any error was harmless.

"An instruction is argumentative when it recites facts drawn from the evidence in such a manner as to constitute argument to the jury in the guise of a statement of law. [Citation.]  'A jury instruction is [also] argumentative when it is " 'of such a character as to invite the jury to draw inferences favorable to one of the parties from specified items of evidence.' [Citations.]" ' [Citation.]" (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1244.)  Instructions should not "relate particular facts to a legal issue." (*People v. Wharton* (1991) 53 Cal.3d 522, 570.)  " 'In a proper instruction, "[what] is pinpointed is

14

not specific evidence as such, but the theory of the defendant's [(or the prosecution's)] case." ' [Citation.] (*People v. Santana* (2013) 56 Cal.4th 999, 1012, bracketed text in original, italics omitted.)

The trial court made the following two additions to the standard robbery instruction:

- o " 'Force' is a relative concept. In determining if force was used, you may consider the victim's physical characteristics as well as those of the defendant."
- o "Property is taken from the victim's immediate presence if the victim leaves the vicinity of the property out of fear."

Defendants do not argue that these were incorrect statements of law. Instead, they claim the statements improperly highlighted the facts favorable to the prosecution.

As for the statement concerning force, defendants argue that the statement unfairly outlined the prosecution's argument that the difference in size between defendants and the victims tended to establish force. This language tracks the holding in *People v. Mungia* (1991) 234 Cal.App.3d 1703, at page 1709, that relative sizes of the defendant and the victim may tend to establish force.

For their argument that this proper statement of law was improperly argumentative as a jury instruction, defendants rely on *People v. Hunter* (2011) 202 Cal.App.4th 261 (*Hunter*), at page 267 and pages 276 to 277. In that case, the trial court instructed the jury: " 'When a defendant commits a robbery by displaying an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm. The victim's inability to say conclusively that the gun was real and not a toy does not create a reasonable doubt as a matter of law that the gun was a firearm.' " (*Id*. at p. 267.) The appellate court found this instruction problematic because "the jury could just as accurately have been told the opposite, that when a defendant displays an object that

15

looks like a gun, the object's appearance and the defendant's conduct may constitute sufficient circumstantial evidence to support a finding that *it was not a firearm*." (*Id*. at p. 276, original italics.)

Defendants' reliance on *Hunter* is misplaced. Unlike the instruction in *Hunter*, the instruction in this case did not make the prosecution's argument. In *Hunter*, the instruction informed the jury that a victim's inability to identify the object as a gun did not create a reasonable doubt. Here, there is no such intrusion into jury thinking. Instead, the court merely informed the jury that it could "consider" the physical characteristics of defendants and the victims in determining whether force was used.

Likewise, the statement concerning immediate presence was not argumentative. This statement was a proper statement of the law found in *People v. Dominguez* (1992) 11 Cal.App.4th 1342 (*Dominguez*), at pages 1348 to 1349. In that case, the defendants entered the victim's apartment and brandished a gun. The victim fled. After the victim fled, the defendants detached a VCR from the wall and took it, as well as other electronics. The appellate court concluded the electronics were taken from the immediate presence of the victim because the defendants scared her into fleeing. (*Id*. at p. 1346.)

Defendants' argument concerning why this statement was an argumentative instruction is not clear. They argue, comparing this case to *Dominguez*: "This case presents a completely different factual scenario, with the argument coming down to whether or not [defendants'] mere physical presence should amount to fear, and whether the property in question was abandoned, with [defendants] arguing that the property was still in the possession of Bank of America, where it had been all along." This argument seems to conflate the elements of possession and immediate presence. As we discussed above, the money in the ATM's, at least up to the amount eventually withdrawn by defendants, was in the constructive possession of the victims because they had control over it. Immediate presence had to do with whether the victims were in the vicinity of the money. In any event, the statement concerning immediate presence in the court's

16

instruction did not make the prosecution's argument. Instead, it set forth the legal principle for the jury to apply to the facts.

In any event, the two statements inserted into the robbery instruction were not prejudicial, even if we assume for the purpose of argument that they were argumentative. The giving of an argumentative instruction is evaluated for prejudice under the state harmless error standard, not under the federal harmless error standard. (*People v. Santana, supra,* 56 Cal.4th at p. 1012.) The evidence strongly indicated that defendants intentionally and successfully used force and intimidation to gain the advantage over their smaller victims and take their money. It is not probable that defendants would have obtained a better result if the challenged instructions had not been given. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

IV

*Conspiracy as a Felony*

Defendant Mullins contends that the trial court abused its discretion by not sentencing on the felony conspiracy count as a misdemeanor. We disagree.

Conspiracy to commit petty theft is a felony (a wobbler) that may be punished as either a felony or a misdemeanor. (Pen. Code, § 182, subd. (a); *People Tatman* (1993) 20 Cal.App.4th 1, 7.) Here, defendant Mullins argued for punishment of the conspiracy as a misdemeanor, but the trial court, after consideration, decided to impose felony sentencing.

The trial court said: "[C]onspiring to do a misdemeanor is more serious in terms of the law than the misdemeanor itself, and therefore it can be a felony. [¶] So if you plan and take action toward committing even a misdemeanor, there is a public policy and a reason in the law why that is more serious, because it creates the possibilities of greater risk to our society and to other people, in that other crimes will take place. [¶] . . . So the Supreme Court has approved this thinking fairly recently, that even though the attempt seems less serious, conspiracy to commit it is a felony and for good reason. So I, having

thought about that, decided that in fact the Count Four should be treated as a felony. [¶] So I did consider the fact that Mr. Mullins is young, does not have much of a record or prior criminal activities, one youthful theft of a bike, I believe."

Penal Code section 17, subdivision (b) gives the trial court discretion to reduce certain felonies, often referred to as wobblers, to misdemeanors. (Pen. Code, § 17, subd. (b); *People v. Douglas* (2000) 79 Cal.App.4th 810, 812-813.) The statute does not specify the criteria a court should consider, but California appellate decisions have indicated the pertinent factors may include those relevant to sentencing decisions, such as the circumstances of the offense, the defendant's appreciation of and attitude toward the offense, and the defendant's character as evidenced by the defendant's behavior and demeanor at the trial. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978 (*Alvarez*), superseded by statute on other grounds as indicated in *People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108.) We review the trial court's ruling on a motion to reduce a felony to a misdemeanor pursuant to Penal Code section 17, subdivision (b) for an abuse of discretion and give deference to the trial court's weighing of the relevant factors. (*Alvarez, supra,* at p. 981.) The appellant has the burden of showing that the denial of the motion was clearly irrational or arbitrary. (*Id.* at p. 977.)

Defendant Mullins contends the trial court's denial of his motion to punish count four as a misdemeanor was an abuse of discretion because the trial court focused on the crime of conspiracy in the abstract and did not consider the circumstances of this case or defendant Mullins's character. To the contrary, the trial court's ruling was neither irrational nor arbitrary and, thus, was not an abuse of discretion. (*Alvarez, supra,* 14 Cal.4th at p. 977.)

While the trial court discussed the principle that a conspiracy is more serious than an attempt to commit a crime, that discussion was not divorced from the facts of this case. The discretion to sentence as either a felony or misdemeanor applies to all wobblers. Here, the trial court was noting that the actual crime committed in this case—

18

conspiracy—is serious, even though it was conspiracy to commit a misdemeanor. The trial court demonstrated that it was aware of defendant Mullins's youth and nonserious prior criminal record, but it still decided that felony sentencing was appropriate. No greater discussion of the specific circumstances of this case was required. There was no abuse of discretion.

V

*Sentencing Minute Order and Abstract of Judgment*

Defendant Russell argues, and the Attorney General agrees, that the sentencing minute order and the abstract of judgment must be modified to reflect the sentence imposed orally by the trial court. We also agree.

If the minute order or abstract of judgment is different from the oral pronouncement of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185–186.)

Here, the trial court orally imposed the middle term of four years on count one as to defendant Russell. However, the minute order and the abstract of judgment both reflect imposition of the upper term of six years. Also, the court orally imposed a consecutive 16 months each (one-third the middle term) for counts two and three, as recommended by the probation report. However, the abstract of judgment reflects imposition of just a four-month term for counts two and three. Therefore, the minute order and abstract of judgment must be corrected to reflect the sentence actually imposed.

DISPOSITION

The judgments are affirmed. As to defendant Russell, the trial court is directed to (1) correct the sentencing minute order and the abstract of judgment to reflect that defendant Russell was sentenced to the middle term of four years on count one, (2) correct the abstract of judgment to reflect that defendant Russell was sentenced to a

19

consecutive term of 16 months each on counts two and three, and (3) send a corrected abstract of judgment to the Department of Corrections and Rehabilitation.


                                                          NICHOLSON     , J. \*


We concur:


       RAYE           , P. J.


       DUARTE       , J.

---

\* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.