Filed 9/3/24  P. v. Gonzalez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>  v.<br><br>RAUL GONZALEZ,<br><br>   Defendant and Appellant. | C097861<br><br>(Super. Ct. No. P15CRF00673) |

Defendant Raul Gonzalez and four other people—Nalana Nicole Omega, Roberto Barrera, Danielle Weed, and Daisy Garcia—spent several hours consuming drugs at the trailer home of retiree Pete T.  They left with several pieces of Pete's personal property at the end of the night.  They also left Pete with a fatal stab wound to the chest.  A jury found defendant guilty of first degree felony murder (Pen. Code, § 187, subd. (a); unless otherwise stated, statutory section citations that follow are to the Penal Code), and the trial court sentenced him to 25 years to life in state prison.  Defendant and Barrera, tried

1

jointly, appealed, and another panel of this court affirmed the judgment. (See *People v. Barrera* (July 12, 2019, C085232) [nonpub. opn.].)

Defendant petitioned for resentencing under section 1172.6 (formerly section 1170.95, renumbered as section 1172.6 (Stats. 2022, ch. 58, § 10)). Following an evidentiary hearing, the trial court found beyond a reasonable doubt that defendant was a major participant in the underlying felonies (first degree burglary and robbery), who acted with reckless indifference to human life. Accordingly, the trial court denied the petition. Defendant appeals. We affirm the trial court's order.

FACTS AND HISTORY OF THE PROCEEDINGS

A.     *The Robbery/Burglary and Stabbing*

Pete lived in a trailer outside of Placerville. He owned several guns, a coin collection, a laptop, and a cell phone. He was also addicted to methamphetamine.

Garcia lived in a flop house with defendant and his girlfriend, Omega. On January 30, 2015, defendant, Omega, and Garcia were in Garcia's room at the flop house. Omega was talking about ways to obtain money to buy drugs. The group agreed to steal a car. They went to an apartment complex, jumped in a car with the keys in it, and took off. Omega was driving, defendant was in the front passenger seat, and Garcia was in the back seat. They drove to a friend's house, hung out there, and used methamphetamine. Garcia asked the friend to drive her back to the flop house. Garcia woke up to find defendant and Omega rushing into her room and emptying bags of jewelry and old coins.

On January 31, 2015, Garcia used methamphetamine in her room at the flop house with a group that included defendant, Efren Zamora (a person Garcia knew as defendant's uncle or godfather), Omega, and Barrera. Defendant was laying out lines of drugs to snort. Omega had a little revolver and a shotgun. She was taking pictures of herself with the revolver. Garcia asked the others to leave. Defendant told Garcia he would not leave until he wanted to leave.

2

At some point, the group decided to leave the flop house together. Defendant had the shotgun and Omega had the revolver. Defendant put the shotgun in the back of a two-door hatchback that belonged to Zamora. Defendant drove, Omega was in the front passenger seat, and Garcia, Zamora, and Barrera were in the back. They made a number of stops along the way and dropped off Zamora, who testified that he had a bad feeling about that night and wanted out of the car. Garcia, Omega, Barrera, and defendant then made their way to a liquor store where they picked up Weed. Garcia had never met Weed before. Omega said Weed knew how to get to "the old man's house."

Once in the car, Weed started talking about an old man with jewelry and guns. Garcia testified that Omega had previously talked about an old man, who was a child molester, or "chomo." As they drove, Garcia realized Weed and Omega were talking about the same man, the victim Pete, and they were on their way to his house to steal or rob him of jewelry and guns. Weed said she was going to indicate with her eyes where the guns were kept.

Weed also said she was going to kill this man. Defendant objected and said no one was getting killed.

The group stopped short of their destination. Defendant got out of the car and retrieved the shotgun from the back of the car. They drove up to the old man's trailer. Defendant handed the shotgun to Barrera. Defendant asked Barrera to stay in the car with the shotgun and stand guard. The others went inside and smoked methamphetamine with Pete. Weed walked around the trailer looking for jewelry and other valuables and putting them in her pockets.

At some point, defendant said he wanted to buy more methamphetamine, and Pete called someone to arrange a sale. At another point, Weed mentioned Pete had a black gun. Pete reluctantly brought out a handgun. Defendant handled the gun.

After some time, defendant asked Garcia to bring in Barrera from the car. Barrera went inside, leaving the shotgun behind. Garcia waited in the car. Omega came out, sat

3

in the car, and turned the engine on. After a couple of minutes, Weed started bringing things out of the trailer and putting them in the car, including a jewelry box, a box of quarters, a laptop, and guns. Omega went back inside.

A short time later, Omega, Barrera, Weed, and defendant came out of the trailer quickly and got in the car. Weed had a latex glove on and a kitchen knife in her gloved hand. Omega told Weed to give her the knife. Weed did so, and Omega wrapped it in a sweater. Defendant said something like, "what did that crazy bitch just do?"

The group drove to another house. Omega took the sweater to the back of the house. When Omega came back, she did not have the knife. The group then went back to the flop house. Garcia suspected that Weed had stabbed Pete. The next day, Weed admitted, and defendant confirmed, that Weed had stabbed Pete.

Pete was found dead in his trailer on February 3, 2015. He had been stabbed in the chest, and there was blood in the sink, blood droplets on the sliding glass door, and a blood smear on a sheer curtain and the sliding glass door, indicating that Pete did not die right away but moved around the trailer and was coughing up blood. No knife or other weapon was found. Law enforcement officers searched the trailer and did not find Pete's laptop or cell phone. They found a .40-caliber Glock magazine and ammunition, but no firearm.

Defendant and Omega were involved in an unrelated traffic stop on February 4, 2015. A deputy with the El Dorado County Sheriff's Department searched Omega's purse and found a loaded Glock .40-caliber semiautomatic handgun. The deputy found another loaded gun in Omega's backpack and two laptops in the car.

The Sheriff's Department got a break in the case on February 8, 2015, when Garcia came forward to disclose part of what happened that night.

4

B.    *Jury Trial, Verdict, Sentencing, and Appeals*

An information charged Weed, Omega, Barrera, and defendant with Pete's murder (§ 187, subd. (a)).  In April and May 2017, defendant and Barrera were tried separately from Omega and Weed.  The prosecution's witnesses testified substantially as described above.

Defendant testified in his own defense.  He acknowledged using methamphetamine heavily with Omega, his girlfriend, and spending time in Garcia's room at the flop house.  Defendant testified that on January 31, 2015, he believed the trip to Pete's trailer was solely to buy methamphetamine.  He denied there were any guns in the car or any discussion of burglary or theft.  Defendant said he was not in the trailer when Weed stabbed Pete, and only found out afterwards in the car from a conversation between Omega and Weed.

On cross-examination, defendant admitted that, when he was first interviewed by law enforcement, he lied about his association with Barrera and Garcia or knowing who Weed was.  Defendant also acknowledged that he lied when he told detectives he had not been to Pete's trailer on January 31, 2015.

The jury found defendant guilty of first degree murder.  The trial court sentenced defendant to 25 years to life in state prison.

Defendant and Barrera appealed.  In affirming the judgment, this court rejected various arguments, including the contention that the conviction should be reversed because the jury had been mis-instructed on felony murder in light of the retroactive application of the changes to the law made by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).  (*People v. Barrera, supra,* C085232.)  The Supreme Court granted review in October 2019 and deferred further action pending decision in *People v. Gentile* (2020) 10 Cal.5th 830.  When that decision issued, the high court dismissed defendants' petition for review.

*C.	Petition for Resentencing*

In February 2021, defendant filed a petition for resentencing under former section 1170.95.  The trial court issued an order to show cause in February 2022.  The parties submitted on the transcripts and exhibits from the jury trial.

An evidentiary hearing was held on December 2, 2022.  Following argument, the trial court found that the evidence established beyond a reasonable doubt that defendant was a major participant in first degree burglary or robbery and acted with reckless indifference to human life.  Accordingly, the trial court denied the petition.

Defendant filed a timely appeal.

DISCUSSION

I

*A.	Senate Bill 1437 and Standard of Review*

Senate Bill 1437 amended the felony-murder rule to provide:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2 [the statute defining felony-murder special circumstances]."  (§ 189, subd. (e).)  The new law was designed "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1(f).)

The Legislature also added former section 1170.95 (now section 1172.6), which establishes a procedure for offenders previously convicted under a felony-murder theory to obtain the benefits of these changes retroactively. As relevant here, under the new law offenders can petition for relief in the court where they were sentenced if: (1) the complaint or information filed against them "allowed the prosecution to proceed under a theory of felony murder"; (2) they were convicted of murder following a trial; and (3) they could not now be convicted of murder "because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).) If a petitioner makes a prima facie showing of entitlement to relief, the trial court shall issue an order to show cause (§ 1172.6, subd. (c)) and hold an evidentiary hearing at which the prosecution bears the burden of proving "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under the law as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).) The parties may offer new or additional evidence at the hearing, and the trial court sits as an independent factfinder to determine beyond a reasonable doubt whether the defendant is guilty of murder under a valid theory. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745.)

On appeal, we review the trial court's findings for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) Under that standard, we " ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the petitioner guilty] beyond a reasonable doubt." ' " (*Ibid.*) We presume in support of the judgment the existence of every fact that can be reasonably deduced from the evidence. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022; see also *People v. Pete* (2017) 15 Cal.App.5th 1063, 1071 [defendant on substantial evidence review "bears an 'enormous burden' "].)

*B.* Banks/Clark *Factors*

As noted, Senate Bill 1437 amended section 189 to limit the scope of the felony-murder rule, and now requires that the prosecution prove beyond a reasonable doubt that defendant "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3); see § 1172.6, subds. (a)(3) & (d)(3).) Our Supreme Court clarified the meaning of these requirements in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

*Banks* considered "under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant . . . ." (*Banks, supra,* 61 Cal.4th at p. 794.) The high court identified various factors that should be considered in making that determination, including: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Id.* at p. 803, fn. omitted.) Applying these factors, the *Banks* court found the evidence was insufficient to show the defendant there—a getaway driver for an armed robbery—was a major participant, where there was no evidence establishing his role in planning the robbery or procuring weapons, and no evidence he was present for the robbery or played a role in instigating the shooting. (*Id.* at pp. 805, 807-808.)

Our Supreme Court considered the "reckless indifference" determination in *Clark.* (*Clark, supra,* 63 Cal.4th at pp. 614-623.) Reckless indifference to human life is " 'implicit in knowingly engaging in criminal activities known to carry a grave risk of

death.' " (*Id.* at p. 616.) It "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Id.* at p. 617.) Recklessness has both a subjective and an objective component. (*Ibid.*) Subjectively, the defendant must consciously disregard risks known to him. (*Ibid.*) Objectively, recklessness is determined by "what 'a law-abiding person would observe in the actor's situation,' " that is, whether defendant's conduct " 'involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.' " (*Ibid.*) The fact a robbery involved a gun or carried a risk of death is insufficient, by itself, to support a finding of reckless indifference. (*Id.* at pp. 617-618; see also *In re Scoggins* (2020) 9 Cal.5th 667, 677 [" 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life"].)

*Clark*, like *Banks,* identified various factors to be considered in determining whether the defendant acted with reckless indifference. (*Clark, supra,* 63 Cal.4th at pp. 618-623.) These include: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*In re Scoggins, supra,* 9 Cal.5th at p. 677 [listing factors set forth in *Clark, supra,* at pp. 618-623].) Applying these factors, the *Clark* court found the evidence was insufficient to show the defendant acted with reckless indifference to human life in the armed robbery of a computer store, where he planned the robbery but was not armed or physically present in the store when the victim was shot, did not have the intent to kill, and attempted to minimize the likelihood of violence by timing the robbery for a time when fewer people

would be present and using an unloaded gun.  (*Clarks, supra,* at pp. 611, 618-623.)

### C.      Sufficiency of Evidence

Defendant argues the trial court should have granted the petition because there was insufficient evidence to support the conclusion he was a major participant in a felony who acted with reckless indifference to human life.  Defendant claims that at most the evidence shows that he knowingly went along with the plan to steal items from Pete, "against his will if necessary," to fund the purchase of drugs.  On appeal, defendant acknowledges that he "may have brought along a shotgun that night," but argues he left it in the car to ensure it would not be used against Pete.  Defendant also insists he was not aware that Weed had armed herself with a knife and was surprised by her actions.  These arguments fail.

Preliminarily, defendant argues there was insufficient evidence of robbery based primarily on Garcia's testimony that Weed was openly taking jewelry in the trailer and putting it in her pockets without objection from Pete.  He asserts that the evidence was insufficient to establish the force or fear elements of robbery.  (§ 211 ["Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear"].)  We disagree, given the ample evidence of intimidation of Pete occasioned by the appearance of a group of young people, all of them drug users, who appeared unannounced at night at the isolated trailer of an elderly retiree.  (See *People v. Wright* (1996) 52 Cal.App.4th 203, 210-211 [force includes all " 'means by which the person robbed is put in fear sufficient to suspend the free exercise of . . .  will or prevent resistance to the taking' "]; *People v. Mullins* (2018) 19 Cal.App.5th 594, 604 ["The fear is sufficient if it facilitated the defendant's taking of the property.  Thus, any intimidation, even without threats, may be sufficient"].)

Regardless of whether the underlying felony was just burglary, we conclude there was sufficient evidence that defendant was a major participant who acted with reckless indifference to human life under the *Banks* and *Clark* factors, as we discuss next.

### 1. *Major Participation* (Banks)

For the first *Banks* factor, we look to defendant's role in planning the criminal enterprise. (*Banks, supra,* 61 Cal.4th at p. 803.) The trial court found that defendant had a planning role. Substantial evidence supports the trial court's finding. Specifically, there was evidence that defendant and Omega were committing burglaries to obtain items to pawn to buy drugs. Shortly before Pete's murder, defendant and Omega stole a car and used it to commit a burglary. Defendant put the shotgun into the back of the car he drove to Pete's trailer. Defendant picked up Weed to direct them to Pete's trailer and drove the group there. Defendant stopped the car short of Pete's trailer and took the shotgun out of the back of the car. He handed the shotgun to Barrera and told him to stand guard. Thus, the first *Banks* factor weighs in favor defendant being a major participant.

For the second *Banks* factor, we consider defendant's role in supplying or using lethal weapons. (*Banks, supra*, 61 Cal.4th at p. 803.) Defendant brought a shotgun and gave it to Barrera, but there was no evidence he supplied the knife Weed used to stab Pete. The second *Banks* factor weighs against defendant being a major participant.

For the third *Banks* factor, we consider defendant's awareness of the dangers posed by the nature of the crime, the weapons used, or the past experience or conduct of the other participants. (*Banks, supra,* 61 Cal.4th at p. 803.) The trial court looked to Weed's statement in the car that she intended to stab Pete and take his guns in finding this factor proved beyond a reasonable doubt. Other evidence supports the trial court's finding. Defendant brought a shotgun and Omega, his girlfriend, brought a revolver. As mentioned, defendant gave the shotgun to Barrera and told him to stand guard. Further,

11

based on Weed's statements in the car about Pete's guns, the trial court could reasonably infer that the group was planning to steal guns from Pete, which in itself posed a great risk of danger. But first and foremost, Weed stated that she intended to kill Pete, a threat she ultimately carried out. While defendant stated that no one was going to be killed, he did nothing to prevent Weed from acting on her homicidal intent, such as by abandoning their plans and turning the car around. Instead, defendant continued to drive Weed—a person defendant knew posed a grave danger to Pete—to his trailer.

For the fourth *Banks* factor, we consider whether defendant was present at the scene of the killing, in a position to facilitate or prevent the actual murder, and whether his own actions or inaction played a particular role in the death. (*Banks, supra,* 61 Cal.4th at p. 803.) Here, although defendant testified that he was not in the trailer at the time of the stabbing, there was ample evidence that he was. Garcia testified that defendant, Omega, Barrera, and Weed all came out of the trailer quickly and got in the car. Weed was carrying the fatal knife. The trial court could reasonably infer the stabbing took place immediately beforehand, when all but Garcia were inside the trailer, and thus that defendant was present at the time of the killing. Additionally, the fact that Weed donned a latex glove before stabbing Pete, undoubtedly so as not to leave fingerprints on the knife handle, supports the inference that the stabbing was not a complete surprise and defendant was in a position to interfere as Weed prepared to stab Pete. Moreover, as discussed, defendant was driving the car carrying Weed and the others to the trailer, and therefore he could have acted to prevent the murder by turning the car around when Weed declared her intent to kill Pete. To be sure, defendant said that no one was going to be killed, but there is no evidence that Weed suggested that she agreed.

For the final *Banks* factor, we focus on what defendant did after lethal force was used. (*Banks, supra,* 61 Cal.4th at p. 803.) Again, Garcia testified that Omega, Barrera, Weed, and defendant came out of the trailer quickly and got in the car, suggesting the

12

stabbing had just occurred.  Defendant appears to have made no attempt to render aid to Pete, who lived long enough to cough up blood in the sink and smear blood on a door and curtain.  Defendant, or one of the group, took Pete's cell phone, leaving him unable to call for help.  This factor also weighs in favor of a finding that defendant was a major participant.

Based on the totality of the circumstances, we conclude substantial evidence supports the trial court's finding that defendant was a major participant in the underlying robbery or burglary.  We next consider whether he acted with reckless indifference to human life.

### 2.　　　*Reckless Indifference to Human Life* (Clark)

Our Supreme Court has acknowledged an overlap between being a major participant and having a reckless indifference to human life, such that " 'the greater the defendant's participation in the felony murder, the more likely that he [or she] acted with reckless indifference to human life.' " (*Clark, supra*, 63 Cal.4th at p. 615.)  Applying the *Clark* factors, we conclude the record contains sufficient evidence from which the trial court could conclude beyond a reasonable doubt that defendant acted with reckless indifference to Pete's life.

For the first *Clark* factor, we consider defendant's knowledge of weapons used, the defendant's own use of weapons, and the number of weapons involved.  (*Clark, supra*, 63 Cal.4th at p. 618.)  As noted, substantial evidence supports the conclusion that defendant brought the shotgun in the car and was aware of the revolver Omega carried.  Although Weed committed the murder with a knife, defendant clearly understood that the situation was volatile and dangerous, with multiple weapons in the hands of people who had been consuming methamphetamine for hours.  This factor weighs against defendant.

As to the second *Clark* factor, we consider defendant's presence at the crime scene an opportunity to prevent or mitigate the crime or aid the victim.  (*Clark, supra*,

13

63 Cal.4th at p. 619.)  Here, substantial evidence also supports the conclusion that defendant was inside the trailer when Weed stabbed Pete, despite defendant's testimony to the contrary.  Substantial evidence also supports the conclusion that defendant was afforded an opportunity to restrain the crime.  Defendant, who was driving, could have turned the car around or dropped off Weed, when she said she was going to kill Pete.  There was also substantial evidence to support a reasonable inference on the part of the trial court that defendant had an opportunity to render aid to Pete by driving him somewhere for medical treatment, or at least calling for help or leaving him a cell phone to do so.  This factor also weighs against defendant.

The third *Clark* factor involves the duration of the underlying felony.  (*Clark, supra*, 63 Cal.4th at p. 620.)  Here, the evidence showed that defendant, Omega, Garcia, and Weed consumed methamphetamine for hours in Pete's trailer.  During that time, Weed was moving around the trailer, going through Pete's possessions, and pocketing anything of value.  She then carried these items to the car.  On this record, the trial court could reasonably infer that the robbery or burglary took place over several hours, which posed an escalating risk of violence and reckless indifference.  (*Id.* at p. 620.)  The third factor weighs against defendant.

For the fourth *Clark* factor, we inquire as to whether defendant knew that Weed was likely to kill Pete.  (*Clark, supra*, 63 Cal.4th at p. 621.)  Weed, of course, stated her intention to kill Pete on the drive to the trailer.  Gonzalez objected, but the trial could reasonably infer that Weed's declaration gave defendant ample warning that she intended to and would harm Pete.  Thus, contrary to defendant's testimony, the stabbing was not a shock.  This factor weighs against defendant.

As to the final factor in *Clark*, we consider defendant's efforts to minimize the risks of violence during the felony.  (*Clark, supra*, 63 Cal.4th at pp. 621-622.)  There is nothing in the record indicating that defendant did anything to minimize the risk of violence during the crime.

Accordingly, we conclude from the totality of the circumstances that substantial evidence supports the trial court's finding that defendant acted with reckless indifference to human life.

## DISPOSITION

The order denying the petition is affirmed.

                                        _____
                                        HULL, Acting P. J.


We concur:


_____
DUARTE, J.


_____
BOULWARE EURIE, J.