Filed 8/29/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B283097 |
| Plaintiff and Appellant, | (Super. Ct. No. 2015012942) |
| | (Ventura County) |
| v. | |
| AMAYA MONIQUE MARTIN, | |
| Defendant and Respondent. | |

The fabric of the law will stretch only so far before it will unravel. Here, a professional thief entered in to an international conspiracy to commit as many petty thefts as she could get away with. She was foiled by security guards and the police. She seeks to stretch Proposition 47 to cover her conspiracy to commit petty theft. She convinced the trial court. But it just won't stretch that far. It is difficult, if not impossible, to believe that the electorate intended that a person, such as respondent, with five prior separate prison terms who joined an international conspiracy to commit petty theft, would deserve misdemeanor treatment. To say it out loud or put it on paper causes considerable pause.

Respondent Amaya Monique Martin was convicted of felony conspiracy to commit petty theft. (Pen. Code, § 182, subd. (a)(1).)[1] The People appeal from an order granting respondent's petition to recall her felony sentence and resentence her to misdemeanor shoplifting pursuant to sections 459.5 and 1170.18, which were enacted by Proposition 47.

We reverse. The trial court erroneously determined that a felony conviction for conspiracy to commit petty theft is eligible for reduction to a misdemeanor under section 1170.18. We hold that Proposition 47 does not authorize the reduction of a felony conspiracy conviction to misdemeanor shoplifting.

*Negotiated Disposition and Sentence*

The information consisted of eight counts. In January 2016 respondent pleaded guilty to three counts: count 2 (felony commercial burglary over $950 in violation of section 459), count 4 (felony conspiracy to commit petty theft), and count 8 (misdemeanor shoplifting in violation of section 459.5, subdivision (a)). All of the crimes were committed on different dates in January 2015. The remaining counts were dismissed. Respondent admitted five prior separate prison terms (§ 667.5, subd. (b)) and one prior "strike." (§ 667, subds. (c)-(e)(1).)

The trial court dismissed the strike and three prior prison terms. It sentenced respondent to prison for three years, four months, to be served consecutively to a four-year prison term imposed for a 2015 burglary conviction in another case. The consecutive prison sentence was calculated as follows: eight months for the burglary (one-third the middle term of two years), plus eight months for conspiracy to commit petty theft (same), plus two years for the two prior prison terms. As to the

---

[1] All statutory references are to the Penal Code.

misdemeanor, respondent was sentenced to a concurrent term of 180 days.

*Facts Underlying the Three Counts to*
*Which Respondent Pleaded Guilty*

As to count 4, conspiracy, on January 24, 2015, a security guard saw respondent and two other women in the cosmetic aisle of a Walmart store. He recognized the women as suspects in a prior shoplifting at another Walmart store. One of the women put cosmetics into her purse. The three women walked past open cash registers and exited the store. The security guard stopped them. He recovered stolen cosmetics valued at $794.50. Cosmetics valued at $486.30 were missing and never recovered.

A sheriff's deputy viewed a video of the incident. The video "showed three female subjects entering the Wal-Mart store, walking to the cosmetic aisle, all standing together, looking around the area nervously, putting items into purses, and then walking out of the store together." It appeared that "they were all working together."

As to count 2, felony commercial burglary, on January 16, 2015, respondent and two other persons "arrived together in a . . . sedan" at a Walmart store. They entered the store and walked to the cosmetics aisle. "They proceeded to remove cosmetics items from the shelves and fill a purse and a grocery-type reusable bag that was placed . . . in the [shopping] cart." "They all left the store within seconds of one another after walking past cash registers [and] not paying for the items they selected." The stolen cosmetics were valued at $966.[2] The property was never recovered.

---

[2] The trial court did not reduce the felony commercial burglary (count 2) and it plays no part in this appeal.

As to count 8, misdemeanor shoplifting, on January 23, 2015, respondent and two other persons entered an Alberston's store together. While respondent appeared to act as "a lookout," the two other persons removed "[a]lcohol items and possibly cosmetics" from shelves and "secret[ed] them."

An Albertson's employee saw the three persons "walking out the store with a cart loaded with merchandise which they didn't pay for." The employee said, "'Hey, what are you doing?' And they just kept walking." The employee could not recall the value of the property taken.

Respondent told detectives: "She had been approached earlier last year and 'recruited' to steal cosmetics for someone who would send them to Latin America, primarily Guatemala. She would receive about $200 each time she took $1,000 of cosmetics."

*Proposition 47, Section 459.5, aka "Shoplifting"*

At the general election on November 4, 2014, the voters approved Proposition 47, which became effective the next day. "Proposition 47 created the new crime of 'shoplifting,' defined as entering an open commercial establishment during regular business hours with the intent to commit 'larceny' of property worth $950 or less. (Pen. Code, § 459.5, subd. (a).) This provision is related to the general burglary statute, which also applies to an entry with intent to commit 'larceny' or any felony. (Pen. Code, § 459.)" (*People v. Gonzales* (2017) 2 Cal.5th 858, 862 (*Gonzales*).) Section 459.5, subdivision (a) provides, "Shoplifting shall be punished as a misdemeanor."

Proposition 47 added section 1170.18 to the Penal Code. If a person is serving a sentence for a felony offense that would have been misdemeanor shoplifting pursuant to section 459.5,

4

section 1170.18 permits the person to file a petition to recall the felony sentence and resentence the person to a misdemeanor.

### *Conspiracy to Commit Petty Theft Is a "Wobbler"*

Since 1872 when the Penal Code was enacted, conspiracy has been a separate and distinct crime. "[T]raditional conspiracy encompasses an agreement to commit 'any crime.' (§ 182, subd. (a)(1).) Therefore, it is possible to conspire to commit a misdemeanor. [Citations.]" (*People v. Johnson* (2013) 57 Cal.4th 250, 262 (*Johnson*).)

"Conspiracy to commit [misdemeanor] petty theft . . . may be punished as either a felony or a misdemeanor. [Citations.]" (*People v. Mullins* (2018) 19 Cal.App.5th 594, 611 (*Mullins*).) Such a crime is referred to as a "'wobbler.'" (*People v. Williams* (2010) 49 Cal.4th 405, 461, fn. 6.) "The conviction [of a wobbler] constitutes a felony unless and until the crime is reduced by the court to a misdemeanor. [Citations.]" (*Ibid*.) ""If [as in the instant case] state prison is imposed, the offense remains a felony; if a misdemeanor sentence is imposed, the offense is thereafter deemed a misdemeanor. [Citations.]"' [Citation.]" (*People v. Tran* (2015) 242 Cal.App.4th 877, 885.)

"'A conviction for conspiracy requires proof of four elements: (1) an agreement between two or more people, (2) who have the specific intent to agree or conspire to commit an offense, (3) the specific intent to commit that offense, and (4) an overt act committed by one or more of the parties to the agreement for the purpose of carrying out the object of the conspiracy. [Citations.]' [Citation.]" (*Mullins*, *supra*, 19 Cal.App.5th at p. 607.)

"Once one of the conspirators has performed an overt act in furtherance of the agreement, 'the association becomes an active force, [but] it is the agreement, not the overt act, which is

5

punishable.  Hence the overt act need not amount to a criminal attempt and it need not be criminal in itself.'  [Citations.]" (*Johnson, supra*, 57 Cal.4th at p. 259.)

"'Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act.'  [Citations.] Conspiracy separately punishes not the completed crime, or even its attempt.  The crime of conspiracy punishes the agreement itself and 'does not require the commission of the substantive offense that is the object of the conspiracy.'  [Citation.] 'Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes.'  [Citation.]" (*Johnson, supra*, 57 Cal.4th at pp. 258-259; see also *Callanan v. United States* (1961) 364 U.S. 587, 593.)

*Proposition 47 Does Not Apply to Conspiracy to Commit Petty Theft*

*People v. Segura* (2015) 239 Cal.App.4th 1282 (*Segura*), is directly on point, but the trial court refused to follow it.  In *Segura* the defendant was convicted of conspiracy to commit theft.  "He admitted he had unlawfully entered a 7-Eleven store with the intent to commit larceny and had conspired with two codefendants to commit a theft." (*Id*. at p. 1283.)  The trial court denied the defendant's petition to recall his felony sentence and resentence him to a misdemeanor.

The *Segura* court upheld the trial court's ruling "because Proposition 47 does not apply to convictions for conspiracy." (*Segura, supra*, 239 Cal.App.4th at p. 1284.)  It said: "Section 1170.18 specifies the sections of the Health and Safety Code and Penal Code to which it applies.  (Pen. Code, § 1170.18, subds. (a), (b).)  It does not include Penal Code section 182, the conspiracy count.  Thus, the trial court correctly concluded it lacked the

6

statutory authorization to resentence defendant on the conspiracy count. "'If the language [of a statute] is unambiguous, the plain meaning controls.'" [Citation.] And here there is no ambiguity." (*Ibid*., first brackets in original.)

Without mentioning *Segura*, our Supreme Court impliedly rejected *Segura's* reasoning in *People v. Page* (2017) 3 Cal.5th 1175, 1184-1185 (*Page*). *Page* was decided five months after the trial court had resentenced respondent to misdemeanor "shoplifting." The Supreme Court stated: "The statute [section 1170.18, subdivision (a)] does not say that only those defendants who were convicted under the listed sections are eligible for resentencing. The statute instead says that those who are eligible (i.e., defendants serving a felony sentence who would have only been guilty of a misdemeanor had Prop[osition] 47 been in effect at the time of their offenses) may 'request resentencing in accordance with' the listed sections. (§ 1170.18, subd. (a).)" (*Page*, *supra*, at p. 1184; accord, *People v. Martinez* (2018) 4 Cal.5th 647, 652 ["the requirement that resentencing occur 'in accordance with' one of the nine code sections listed in Penal Code section 1170.18(a) does not make resentencing eligibility contingent upon the petitioner having been *convicted* under one of these provisions"].) Thus, "the mere fact that [section 182, the conspiracy statute] is not one of the code sections enumerated in Penal Code section 1170.18(a) is not fatal to [a defendant's] petition for resentencing on [his conspiracy] offense." (*Ibid*.) With the benefit of hindsight, the issue in *Segura* should have been whether the defendant would have been guilty of misdemeanor shoplifting in violation of section 459.5, instead of conspiracy to commit theft in violation of section 182, subdivision

7

(a), had Proposition 47 been in effect at the time of the defendant's offense.

The Court of Appeal in *Segura* believed that its interpretation of the statute would not lead to an "'absurd result.'" (*Segura, supra,* 239 Cal.App.4th at p. 1284.) It explained, "Crimes committed pursuant to a conspiracy present a greater evil than crimes committed by an individual. As the court long ago realized, 'a group of evil minds planning and giving support to the commission of crime is more likely to be a menace to society than where one individual alone sets out to violate the law.' [Citation.]" (*Ibid.*)

The trial court here acknowledged that *Segura* "holds that a felony conspiracy conviction is not eligible for Penal Code section 1170.18 resentencing." Pursuant to the doctrine of stare decisis, the trial court was required to follow *Segura* since the Supreme Court had not yet decided *Page*. "Decisions of every division of the District Courts of Appeal are binding upon all the . . . superior courts of this state . . . . Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court. [Citations.]" (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*).)

The doctrine of stare decisis "'is based on the assumption that certainty, predictability and stability in the law are the major objectives of the legal system . . . .' [Citations.]" (*Peterson v. Superior Court* (1995) 10 Cal.4th 1185, 1195.) "[A]ny acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or *rules developed by the courts and followed under the doctrine of stare decisis*, are in excess of

8

jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on *certiorari*." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 291, italics added.) "Therefore, the [trial court] exceeded its jurisdiction when it refused to follow [*Segura*]." (*Auto Equity*, *supra*, 57 Cal.2d at p. 456; see also *Cuccia v. Superior Court* (2007) 153 Cal.App.4th 347, 354 [procedure to be utilized where trial court disagrees with binding precedent].)

"[T]he rule [of stare decisis] has no application where there is more than one appellate court decision, and such appellate decisions are in conflict. In such a situation, the court exercising inferior jurisdiction can and must make a choice between the conflicting decisions." (*Auto Equity*, *supra*, 57 Cal.2d at p. 456.)

Here, the trial court said that *Segura* "seem[s] to be at odds" with *People v. Huerta* (2016) 3 Cal.App.5th 539 (*Huerta*), which "states the applicable law." We disagree. "Huerta pled guilty to one felony count of second degree commercial burglary (§ 459) based on her theft of eight bottles of perfume worth $463 from a Sears Department Store. Huerta sought to have her conviction redesignated as the newly created misdemeanor of shoplifting . . . ." (*Huerta*, *supra*, at p. 541.) The People argued that the burglary involved an uncharged conspiracy to commit larceny and that "burglary predicated on such a conspiracy may be charged as a felony even after the electorate enacted Proposition 47." (*Id*. at p. 545.)

The Court of Appeal rejected the People's argument: "It follows under the plain text of the statute [section 459.5] that prosecutors would have been required to charge her with shoplifting and could not have charged her with burglary predicated on conspiracy had Proposition 47 been in effect at the

9

time of her offense.  She therefore qualifies to have her burglary conviction redesignated as misdemeanor shoplifting." (*Huerta, supra*, 3 Cal.App.5th at p. 545, fn. omitted.)  The court observed: "Conspiracy played no role in the prosecution of Huerta.  The People charged her with burglary, petty theft, and grand theft." (*Id*. at p. 545.)

*Huerta's* analysis does not preclude a conspiracy conviction under the circumstances of *Segura* or the instant case.  Unlike the defendant in *Huerta*, the defendant in *Segura* was charged with and convicted of felony conspiracy to commit theft.  *Huerta*, therefore, is distinguishable from *Segura*.  *Huerta* does not even mention *Segura*, an extant opinion from its very own district.

To the extent that the *Huerta* court purports to answer the People's contention on the merits, its analysis is not persuasive.  The People framed the issue by claiming that the defendant "'entered the department store in concert with [an accomplice] with the intent to commit the crime of conspiracy therein.'" (*Huerta, supra*, 3 Cal.App.5th at p. 544, brackets in original.)  This is nonsense.  Criminals do not enter a department store to commit conspiracy therein.  They "hatch" a plot to commit the target crime or crimes well before they enter the store.  As in *Segura*, here, and perhaps in *Huerta*, the conspiracies were complete upon agreement to commit the target offense with one conspirator committing an overt act, such as driving to the store.[3]

---

[3] John Wilkes Booth did not commit a conspiracy by entering Ford's Theater.  George Atzerodt did not commit a conspiracy by entering the Kirkwood Hotel where Andrew Johnson was living.  Lewis Payne did not commit a conspiracy by entering the home of William Seward.  They committed the crime of conspiracy at Mary Surratt's dining room table when they

The following hypothetical illustrates this rule: If respondent and her coconspirators were secretly recorded by a police informant as they planned the commission of petty theft inside a department store and were apprehended by the police after committing an overt act but before entering the store, the crime of conspiracy would be complete. On the other hand, the People could not charge respondent with misdemeanor shoplifting because it requires actual entry into the store. (§ 459.5, subd. (a); *Gonzales*, *supra*, 2 Cal.5th at p. 871 [statute "defin[es] shoplifting as an *entry* into a business with an intent to steal, rather than as the taking itself"].)

Thus, under the hypothetical facts, respondent's conspiracy conviction could not be reduced to misdemeanor shoplifting because she would not have been guilty of shoplifting had Proposition 47 been in effect at the time of the offense. (§ 1170.18, subd. (a).) Proposition 47 would lead to absurd results were we to construe it as allowing reduction to misdemeanor shoplifting under the actual facts in the instant case because respondent succeeded in entering Walmart and committing the target offense of petty theft. Such a construction would reward respondent for evading police detection and attaining the objective of the conspiracy.

*Construction of a Statute Vel Non*

When construing a voter initiative statute, "our 'task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent.' [Citation.]" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900-901.) "[W]e look first

agreed to assassinate the President, Vice President, and the Secretary of State. They committed overt acts before they entered the various buildings to commit the target crimes.

11

to the language of the statute. 'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.]" (*People v. Jackson* (1996) 13 Cal.4th 1164, 1255-1256; see also *Gonzales*, *supra*, 2 Cal.5th at p. 868 ["'If the language is unambiguous, there is no need for further construction'"].)

Sections 1170.18, subdivision (a) and 459.5 are not ambiguous. They make clear that the trial court could recall respondent's felony sentence for conspiracy to commit petty theft and resentence her to misdemeanor shoplifting only if her crime would have been shoplifting had Proposition 47 been in effect at the time of the offense. Section 459.5, subdivision (a) defines "shoplifting" as "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed" $950. The statute does not say that a conspiracy to commit shoplifting shall be charged as simple shoplifting. Without such language, we cannot construe section 459.5 as prohibiting the charging of a conspiracy.[4]

---

[4] The rule of lenity has no application here. "'[T]hat rule applies "only if two reasonable interpretations of the statute stand in relative equipoise." [Citation.]' [Citations.]" (*People v. Soria* (2010) 48 Cal.4th 58, 65.) "We may not rewrite the statute to conform to an assumed intention that does not appear in its language." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253.) It is not the function of the judiciary to be lenient with wrongdoers. (*Callanan v. United States*, *supra*, 364 U.S. at p. 596.) The word "shoplifting" is a term of art and not to be

In *People v. Buena Vista Mines, Inc.* (1996) 48 Cal.App.4th 1030, 1034, we stated: "This court is loathe to construe a statute which has the effect of 'adding' or 'subtracting' language. [Citation.]" Thus, here we are loathe to add the following italicized language to section 459.5, subdivision (b): "Any act of shoplifting as defined in subdivision (a) *or any conspiracy to commit shoplifting* shall be charged as shoplifting. No person who is charged with shoplifting may also be charged *with conspiracy to commit shoplifting or* with burglary or theft of the same property."

What we said in *People v. Pecci* (1999) 72 Cal.App.4th 1500, 1504, applies equally to the instant case: "Traditional principles of judicial restraint compel us to refrain from rewriting a statute. [Citation.] This is simply not one of the 'extreme cases' where the judiciary should intervene. [Citation.]"

An extreme case would occur if a literal interpretation of section 459.5 would lead to absurd results. (*See City & County of San Francisco v. Farrell* (1982) 32 Cal.3d 47, 52 ["an initiative measure should receive a practical construction, [and] its literal language may be disregarded to avoid absurd results"].) It is not absurd that the electorate would want to maintain conspiracy to commit shoplifting as a "wobbler," i.e., punishable in the court's discretion as a misdemeanor or felony, instead of requiring that it be punishable as a misdemeanor in all cases.

The courts have long recognized the enhanced dangers of a conspiracy. Almost a hundred years ago, Division One of this court remarked: "[A] group of evil minds planning and giving

_____

considered in its colloquial sense. (*Gonzales*, *supra*, 2 Cal.5th at p. 871, fn. 12.) It is an impermissible "stretch" to say the term includes a conspiracy that is complete before entry into the store.

13

support to the commission of crime is more likely to be a menace to society than where one individual alone sets out to violate the law." (*People v. Welch* (1928) 89 Cal.App. 18, 22.) "The theory . . . is that collaborative criminal activities pose a greater potential threat to the public than individual acts. 'Criminal liability for conspiracy, separate from and in addition to that imposed for the substantive offense which the conspirators agree to commit, has been justified by a 'group danger' rationale. The division of labor inherent in group association is seen to encourage the selection of more elaborate and ambitious goals and to increase the likelihood that the scheme will be successful. Moreover, the moral support of the group is seen as strengthening the perseverance of each member of the conspiracy, thereby acting to discourage any reevaluation of the decision to commit the offense which a single offender might undertake. And even if a single conspirator reconsiders and contemplates stopping the wheels which have been set in motion to attain the object of the conspiracy, a return to the status quo will be much more difficult since it will entail persuasion of the other conspirators. [Citations.]' [Citations.]" (*People v. Tatman* (1993) 20 Cal.App.4th 1, 8, quoting from *People v. Zamora* (1976) 18 Cal.3d 538, 555-556.)

The instant case aptly demonstrates the enhanced dangers of a conspiracy. Respondent was not stealing cosmetics for her personal use. She was acting as part of an international conspiracy to steal cosmetics and transport them to Latin America, where they would be sold. There were no limits on her incentive to steal. The more cosmetics she stole, the more money she was guaranteed to receive. When she entered the Walmart and Albertson's stores, she was accompanied by two

14

coconspirators. They could steal considerably more than a single person acting alone. The presence of three coconspirators supporting each other decreased the chance that one of them would get "cold feet" and not go through with the theft. Moreover, one of them could act as a lookout to avoid detection by security personnel, thus increasing the likelihood that their criminal scheme would succeed.

*Gonzales/Romanowski*

In refusing to follow *Segura*, the trial court concluded that its rationale "cannot be squared with *Gonzales and Romanowski*." The court was referring to *Gonzales*, *supra*, 2 Cal.5th 858, and *People v. Romanowski* (2017) 2 Cal.5th 903 (*Romanowski*). The court found respondent's "argument more consistent with the language of Penal Code section 459.5 as that statute has been recently interpreted by the California Supreme Court" in these cases. The court opined that "*Huerta* seems more in line [than *Segura*] with the reasoning employed in *Gonzales* and *Romanowski*." But these two Supreme Court cases are distinguishable. Neither opinion discusses conspiracy. Nor do they cite *Segura* or *Huerta*.

The defendant in *Gonzales* was convicted of felony second degree burglary. He entered a bank and cashed a forged, stolen check payable to himself for less than $950. Our Supreme Court held: "[T]he electorate . . . intended that the shoplifting statute [section 459.5] apply to an entry to commit a nonlarcenous theft. Thus, defendant's act of entering a bank to cash a stolen check for less than $950, traditionally regarded as a theft by false pretenses rather than larceny, now constitutes shoplifting under the statute." (*Gonzales*, *supra*, 2 Cal.5th at p. 862.)

15

In *Gonzales* the People argued "that, even if defendant engaged in shoplifting, he is still not eligible for resentencing because he also entered the bank intending to commit identity theft. Thus, his felony burglary conviction could have been based on his separate intent to commit that offense." (*Gonzales*, *supra*, 2 Cal.5th at p. 876.) Defendant "counter[ed] that, even assuming he entered the bank with an intent to commit identity theft, section 459.5, subdivision (b) would have precluded a felony burglary charge because his conduct *also* constituted shoplifting." (*Ibid*.) The Supreme Court agreed with defendant: "Section 459.5, subdivision (b) requires that any act of shoplifting '*shall be charged* as shoplifting' and no one charged with shoplifting 'may also be charged with burglary or theft *of the same property*.' (Italics added.) A defendant must be charged only with shoplifting when the statute applies. It expressly prohibits alternate charging and ensures only misdemeanor treatment for *the underlying described conduct*." (*Ibid*., last italics added.) A conspiracy to commit shoplifting is not included in "the underlying . . . conduct" described in section 459.5. (*Ibid*.) "'"The punishable act, or the very crux, of a criminal conspiracy is the evil or corrupt agreement [to commit a crime].'" [Citation.]" (*People v. Homick* (2012) 55 Cal.4th 816, 870.)

In *Romanowski* the Supreme Court interpreted section 490.2, subdivision (a), "[t]he provision of Proposition 47 reducing punishment for theft crimes." (*Romanowski*, *supra*, 2 Cal.5th at p. 907.) The statute provides, "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be

punished as a misdemeanor . . . ." (§ 490.2, subd. (a).) The court held that "theft of access card account information—an offense that includes theft of credit and debit card information—is one of the crimes eligible for reduced punishment." (*Romanowski*, *supra*, at pp. 905- 906.) The court reasoned, "Although theft of access card information differs in some ways from other forms of theft, Proposition 47 broadly reduced punishment for 'obtaining any property by theft' where the value of the stolen information is less than $950." (*Id.* at p. 906, fn. omitted.) Respondent was not punished for obtaining property by theft. She was punished for conspiracy to commit petty theft.

### Prosecutor's Charging Function

"[T]he district attorney of each county independently exercises all the executive branch's discretionary powers in the initiation and conduct of criminal proceedings. [Citations.]" (*People v. Eubanks* (1996) 14 Cal.4th 580, 589 (*Eubanks*).) "The charging function is the sole province of the executive." (*People v. Clancey* (2013) 56 Cal.4th 562, 574.)

If misread, our decision today could provide prosecutors an opportunity to abuse the charging function. When two persons with no criminal records commit an ordinary shoplifting, by charging a conspiracy a district attorney could prosecute as a felony what ought to be a misdemeanor.

A prosecutor must keep in mind that, "[w]hile [he or she] does have a duty of zealous advocacy, 'both the accused and the public have a legitimate expectation that his [or her] zeal . . . will be born of objective and impartial consideration of each individual case.' [Citation.]" (*Eubanks*, *supra*, 14 Cal.4th at p. 590.) "'The prosecutor speaks not solely for the victim, or the police, or those who support them, but for all the People. That

17

body of "The People" includes the defendant and his family and those who care about him. It also includes the vast majority of citizens who know nothing about a particular case, but who give over to the prosecutor the authority to seek a just result in their name.' [Citation.] Thus the district attorney is expected to exercise his or her discretionary functions in the interests of the People at large . . . .' [Citation.]" (*Id*. at pp. 589-590.)

We presume that district attorneys will not abuse the charging function entrusted to them. (See *County of Yolo v. Joyce* (1909) 156 Cal. 429, 433 ["It is to be assumed that [a district attorney], like all other public officials, will properly and conscientiously discharge his duties"]; (*People v. Goodspeed* (1972) 22 Cal.App.3d 690, 705, fn. 4 ["in the absence of any showing to the contrary it must be presumed [a district attorney] has performed official duty properly"]; *People v. Superior Court (Martin)* (1979) 98 Cal.App.3d 515, 521.)

Here, the Ventura County District Attorney did not abuse his charging discretion by prosecuting respondent for felony conspiracy to commit petty theft. Respondent is a recidivist thief. Although she was only 33 years old when she pleaded guilty, she admitted that she had served five prior separate prison terms and had been convicted of a strike. She told a probation officer: "She has lived her entire life stealing to pay her rent, buy food, and take care of her sons when they were all together. She never knew any other way to live." According to the probation report, "She indicated to detectives that she committe[d] these crimes for the money despite allegedly having a good job with an organization whose mission, ironically, was to offer felons employment, training, and job skills, so they will no longer victimize their community."

18

The conspiracy in which respondent was involved was not an ordinary shoplifting scheme; it involved criminal teamwork. She participated in a sophisticated international conspiracy to steal cosmetics in the United States and sell them in Latin America. The potential harm to the public from such a conspiracy was far greater than the harm posed by ordinary shoplifting.

*Conclusion*

Proposition 47 is poorly drafted. The plethora of case law concerning its construction is a testament to its vagueness. But, there is no vagueness here.

The late federal appellate court judge, Ruggero J. Aldisert, treats with the theoretical problem presented here. He borrows from Plowden and the 1574 case of *Eyston v. Studd*. He quotes Lord Denning who relied upon Plowden: "A judge should ask himself [or herself] the question: If the makers of the Act had themselves come across this muck in the texture of it, how would they have straightened it out? He [or she] must then do [what] they would have done. A judge must not alter the material of which it is woven but he [or she] can and should iron out the creases." (Aldisert, *A Judge's Advice: Justifying the Decision* (2011) pp. 221-222.) We have ironed out the theoretical crease by not stretching the fabric of the law to its unraveling point.

*Disposition*

The order granting respondent's section 1170.18 petition is reversed. The matter is remanded to the trial court with directions to (1) vacate the order granting the petition, (2) enter a new order denying the petition, and (3) reinstate the felony conviction and sentence.

The trial court shall prepare a new Abstract of Judgment showing two prior prison terms as well as respondent's conviction of and sentence for felony conspiracy to commit petty theft. The court shall send a certified copy of the new Abstract of Judgment to the Department of Corrections and Rehabilitation.

CERTIFIED FOR PUBLICATION.


YEGAN, J.

I concur:


GILBERT, P. J

20

TANGEMAN, J.:

I dissent. I would affirm the order granting respondent's petition to recall her felony sentence and resentence her to misdemeanor shoplifting. Generally it is proper to charge felony conspiracy even if the underlying conduct is a misdemeanor. (*People v. Mullins* (2018) 19 Cal.App.5th 594, 611-612.) But this general rule is "subject to an exception in the case law which precludes the use of a conspiracy charge to elevate criminal conduct to felony status where there appears an 'affirmative legislative intent' to impose a lesser punishment or no punishment at all." (*People v. Pangelina* (1981) 117 Cal.App.3d 414, 420 [reversing judgment of conviction of conspiracy to commit prostitution].) Proposition 47 evinces an affirmative electoral intent to impose a lesser punishment for any conduct that could be charged as shoplifting. (*People v. Gonzales* (2017) 2 Cal.5th 858, 876 (*Gonzales*) ["A defendant must be charged only with shoplifting when the statute applies. It expressly prohibits alternate charging and ensures only misdemeanor treatment for the underlying described conduct"].)

The Supreme Court has not yet decided whether the ameliorative benefits of Penal Code[1] sections 459.5 and 1170.18 apply to acts of shoplifting by two or more people acting together. Two intermediate courts have reached opposite conclusions. In *People v. Huerta* (2016) 3 Cal.App.5th 539 (*Huerta*), the court concluded that conspiracy may not be charged where the defendant enters a commercial establishment during regular business hours with the intent to commit petty theft; while in

[1] All further undesignated statutory references are to the Penal Code.

1

*People v. Segura* (2015) 239 Cal.App.4th 1282 (*Segura*), the court concluded otherwise.

The Supreme Court has disapproved *Segura*'s reasoning. (Maj. opn. *ante*, at p. 7.) *Huerta*'s reasoning is sound. In *Huerta*, the People argued that a defendant was ineligible for Proposition 47 relief because she "'went in with another accomplice and they did this together' so '[i]t's an uncharged conspiracy.'" (*Huerta, supra*, 3 Cal.App.5th at p. 542.) The court rejected this argument based on the language of section 459.5: "The People's argument raises the question, conspiracy to do what? They answer the uncharged conspiracy was a conspiracy to commit larceny. They argue intent to commit conspiracy is not shoplifting, and burglary predicated on such a conspiracy may be charged as a felony even after the electorate enacted Proposition 47. That may be true for some forms of conspiracy. It is not true, however, for conspiracy to commit larceny. If Huerta harbored the intent to conspire to commit larceny, she necessarily harbored the intent to commit larceny as well . . . [and] [i]f Huerta harbored the intent to commit larceny, [section 459.5, subdivision (b)] directs the offense '*shall* be charged as shoplifting' and further that '[n]o person who is charged with shoplifting may also be charged with burglary or theft of the same property.' [Citation.]" (*Id.* at p. 545.)

*Huerta* is consistent with *Gonzales, supra*, 2 Cal.5th 858. In *Gonzales*, the Supreme Court interpreted section 459.5 to include entry into a bank with intent to commit identity theft because that entry *also* constitutes shoplifting. And although Proposition 47 omits any reference to identity theft, "the focus of the ballot pamphlet was on the value of the property, setting the threshold for felony treatment at $950." (*Id.* at p. 870.) Because Gonzales engaged in conduct that constituted shoplifting under

2

section 459.5, he could only be charged with misdemeanor shoplifting.  (*Id*. at p. 876.)

The majority here adopts the flawed reasoning of *Segura*, *supra*, 239 Cal.App.4th 1282, when it concludes that sections 459.5 and 1170.18, subdivision (a), "are not ambiguous" and do "not say that a conspiracy to commit shoplifting shall be charged as simple shoplifting."  (Maj. opn. *ante*, at p. 12.)  Just as the People argued in *People v. Page* (2017) 3 Cal.5th 1175, the majority concludes that "[w]ithout such language, we cannot construe section 459.5 as prohibiting the charging of a conspiracy."  (Maj. opn. *ante*, at p. 12.)  The Supreme Court rejected exactly the same argument in *Page*, and it should be rejected here.  The *Page* court made clear that relief under Proposition 47 is not limited to cases involving convictions under statutes expressly mentioned in the initiative.  (*Page*, at pp. 1184-1185.)  "Nothing in the operative language of [section 490.2] suggests an intent to restrict the universe of covered theft offenses to those offenses that were expressly designated as 'grand theft' offenses before the passage of Proposition 47."  (*Id.* at p. 1186.)[2]

The majority concludes that felony treatment is justified here because conspiracy is an inchoate crime and presents "enhanced dangers" to the public.  It thus concludes that the electorate never intended to include conspiracy to shoplift within the ameliorative provisions of Proposition 47.  But these are "policy decisions for the electorate to make."  (*Gonzales*, *supra*, 2

---

[2] The *Segura* court did not discuss section 459.5 and what effect it has on the prosecution's discretion to "bypass" Proposition 47 and charge defendants with conspiracy to commit shoplifting.

3

Cal.5th at p. 874.)  In rejecting a similar argument that an interpretation extending Proposition 47's ameliorative benefits to crimes of identity theft "leads to absurd results" because the potential harm of identity theft "is far greater" than for "ordinary shoplifting," the Supreme Court in *Gonzales* said:  "One might question the premise of this argument.  The degree of culpability can reasonably be linked to the value of property stolen, regardless of the technique employed.  In each case, the thief has a specific intent to steal.  In any event, the culpability levels of the various theft offenses are policy decisions for the electorate to make.  Its decision to treat various theft offenses similarly may be debated but it is not absurd."  (*Ibid*.)

That Martin committed conspiracy in the course of shoplifting does not alter the fact that she committed shoplifting. Section 459.5, subdivision (b), expressly curtails the prosecution's charging discretion when the conduct qualifies as shoplifting. (*Gonzales*, *supra*, 2 Cal.5th at p. 876.)  That subdivision barred the People from charging Martin with conspiracy when her underlying conduct constituted shoplifting.  (*Id*. at pp. 862, 876-877.)[3]

This conclusion gives effect to the electorate's stated purposes when it enacted Proposition 47.  "One of Proposition 47's primary purposes is to reduce the number of nonviolent offenders in state prisons, thereby saving money and focusing prison on offenders considered more serious under the terms of

---

[3] The hypothetical advanced by the majority is inapposite. If Martin had been arrested and charged with conspiracy before entering the store, she would not have committed the crime of shoplifting.  Whether Proposition 47 would apply to that particular scenario is not before us.

4

the initiative." (*Harris v. Superior Court* (2016) 1 Cal.5th 984, 992; see Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70 (Voter Information Guide).) Sentencing nonviolent offenders who engage in petty theft to prison is inconsistent with this purpose.

"[Proposition 47] also expressly states an intent to '[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes.' [Citation.]" (*Gonzales*, *supra*, 2 Cal.5th at p. 870.) Martin lacks the prior convictions that would disqualify her from misdemeanor treatment under Proposition 47.

The "uncodified sections of Proposition 47 informed voters that the act 'shall be broadly construed to accomplish its purposes,' and that its provisions 'shall be liberally construed to effectuate its purposes.' (Voter Information Guide, [*supra*,] text of Prop. 47, §§ 15, 18, p. 74.)" (*People v. Buycks* (2018) 5 Cal.5th 857, 877-878.) Construing Proposition 47 broadly to include conspiracy to shoplift is consistent with its purposes.

When voters adopt a law, "their intent governs." (*People v. Jones* (1993) 5 Cal.4th 1142, 1146.) Courts lack the authority to question the voters' policy choices or contravene their directives. (*De La Torre v. Cashcall, Inc.* (Aug. 13, 2018, S241434) __ Cal.5th __ [2018 Cal. Lexis 5749]; see also *Max Factor & Co. v. Kunsman* (1936) 5 Cal.2d 446, 455 ["it is no part of the duty of this court to determine whether the policy embodied in the statute is wise or unwise"].) The stated purposes and directives of Proposition 47 are contravened by the majority's interpretation of its scope. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43

5

Cal.3d 1379, 1386 [court's role is "to effectuate the purpose of the law"].)

Instead of applying a judicial resolution to the "enhanced dangers" presented by conspiracies to shoplift, we should defer to the Legislature or the electorate, whose efforts to resolve this issue are already underway. (See pending Assem. Bill No. 1065 (2017-2018 Reg. Sess.) as amended Feb. 27, 2018 [creating a new crime for "organized retail theft" involving two or more people acting together to steal merchandise for resale]; pending Reducing Crime and Keeping California Safe Act of 2018 (placed on ballot July, 11, 2018) 2020 Bill Text CA v. 20 Initiative No. 17-0044 [reforming theft laws "to restore accountability for serial thieves and organized theft rings"].) Traditional principles of judicial restraint would be well-served by allowing the Legislature or electorate to shape the resolution to those concerns expressed in the majority opinion.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.

6

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Gregory D. Totten, District Attorney, Michelle J. Contois, Deputy District Attorney, for Plaintiff and Appellant.

Todd W. Howeth, Public Defender, William M. Quest, Snr. Deputy Public Defender, Cerise M. Fritsch, Deputy Public Defender, for Defendant and Respondent.