Filed 2/20/24  P. v. Estrada CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TONY EDWARD ESTRADA,<br><br>    Defendant and Appellant. | F084572, F084600, F084605,<br>F084609, F084616<br><br>(Super. Ct. Nos. MCR060199,<br>MCR066519, MCR070490,<br>MCR071907 & MCR073225)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Michael J. Jurkovich, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

A jury convicted defendant Tony Edward Estrada of criminal threats (Pen. Code,[1] § 422, subd. (a)) and found true that he personally used a knife (§ 12022, subd. (b)(1)) in case No. MCR073225. The court found true that defendant had serious prior convictions (§ 667, subd. (a)(1)) and seven prior strike convictions. Defendant was also found in violation of his probation in cases Nos. MCR060199, MCR066519, MCR070490 and MCR071907. Defendant was sentenced in all cases to an aggregate term of 125 years to life plus six years in state prison.

Defendant initially filed separate appeals in cases Nos. MCR060199, MCR073225, MCR066519, MCR070490 and MCR071907 but subsequently filed a request to consolidate the cases into one appeal, which was granted on April 19, 2023. The appeals were consolidated under case No. F084572.

On appeal, defendant argues there was insufficient evidence of sustained fear to support his conviction for criminal threats under section 422. He also claims the trial court abused its discretion when it denied his request under *Romero*[2] and section 1385 to strike his prior strikes and his five-year enhancement, and denied his request to reduce his felony criminal threats conviction to a misdemeanor under section 17, subdivision (b). Defendant claims the minute order should be amended to reflect his indeterminate aggregate term is 125 years to life rather than 150 years to life, and argues his sentence amounts to cruel or unusual punishment under the California Constitution. The People agree the minute order should be amended to reflect an aggregate indeterminate term of 125 years to life but disagree with the remainder of defendant's claims. We agree the minute order should be amended but, in all other respects, we affirm the judgment.

---

[1] All further undesignated statutory references are to the Penal Code.

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

## CASE HISTORY AND FACTUAL BACKGROUND

**Case No. MCR060199 (F084572)**

On November 26, 2019, defendant was convicted of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and the court found true defendant had eight prior strike convictions. Defendant was placed on probation for three years. On October 8, 2021, defendant was found to be in violation of probation and the court revoked and reinstated probation for two years. On February 14, 2022, the trial court found defendant in violation of probation for failing to obey all laws, failing to report to probation, failing to appear in court, and for being in possession of controlled substances and sentenced him on June 29, 2022, to 25 years to life.

**Case No. MCR066519 (F084605)**

On May 14, 2020, defendant was charged with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and it was alleged that defendant had nine prior strike convictions (§ 667, subds. (b)-(i)). Defendant pled guilty to the charge and admitted the special allegations and was placed on probation for two years. On February 14, 2022, the court found defendant in violation of probation and sentenced him on June 29, 2022, to 25 years to life under section 667, subdivision (e)(2)(A)(ii).

**Case No. MCR070490 (F084609)**

On May 6, 2021, defendant was charged with possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)) and it was alleged that he had nine prior strike convictions (§ 667, subds. (b)-(i)). Defendant pled guilty to the charge and admitted the special allegations and was placed on probation for two years. On February 14, 2022, the court found defendant in violation of probation and on June 29, 2022, the court sentenced him to 25 years to life under section 667, subdivision (e)(2)(A)(ii).

**Case No. MCR071907 (F084616)**

On August 13, 2021, defendant was charged with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). Defendant pled guilty to the charge and

3.

admitted nine prior strike convictions, and was placed on probation for two years. On February 14, 2022, the court found defendant in violation of probation and on June 29, 2022, the court sentenced him to 25 years to life under section 667, subdivision (e)(2)(A)(ii).

**Case No. MCR073225 (F084600)**

### A.    Facts of the Case

Defendant is Tommy Gutierrez's uncle and godfather. Gutierrez lived with defendant off and on for about five years. On the day of the incident, Gutierrez and his friend, William Cruz, returned home from a barbecue around 6:00 or 7:00 p.m. and sat down on the couch to watch television. Cruz was renting a room from Gutierrez at the time. While Gutierrez and Cruz were watching television, defendant was pacing back and forth from the kitchen to the living room and was visibly flustered. Defendant was frustrated because he wanted Gutierrez to give him some marijuana, but Gutierrez told him "no" and defendant got mad. Defendant told Gutierrez, "F--- that. F--- you. Give it to me." Defendant then walked into the kitchen and grabbed a knife from a drawer.[3] Defendant walked back to the living room with the knife, stopping at about 10 feet from Gutierrez, and called Gutierrez a "piece of shit" and said, "F---you. I'll kill you."

Gutierrez knew the threat was real when defendant threatened Gutierrez and came towards him with the knife. Gutierrez told Cruz to go outside to avoid being stabbed. Gutierrez followed Cruz outside because he did not want to get stabbed either and feared for his life. Gutierrez walked outside to the front of the house and called the police. Gutierrez was worried about getting stabbed due to defendant's threat and because he knew of defendant's history of violence, including killing others. Defendant had also held a knife to Gutierrez's throat on two previous occasions.

---

**3**    Cruz testified that defendant walked to his room to get the knife, but also stated that he did not see him go in the room or see where he got the knife from.

Defendant followed Cruz and Gutierrez outside with the knife but stayed on the porch while Cruz and Gutierrez stood near the sidewalk.[4] Defendant swore at Gutierrez, waived the knife and said, "Come on. Come on" and threatened to kill him again. Gutierrez testified that, "[i]f I would have stayed in there, I would have been considered a victim of a crime, but I got out." Gutierrez said he felt safe once he was outside because the police were on their way but that he would not have been able to sleep if defendant stayed at the house. The police arrived in less than five minutes. When the police arrived defendant left the knife on the pillar outside and went back inside the house. A knife was located on a pillar in front of the house.

### B.      *Information and Verdict*

Defendant was charged with criminal threats under section 422, subdivision (a). It was alleged that defendant used a deadly weapon, a knife, in the commission of the offense under section 12022, subdivision (b)(1) and had seven prior strike convictions pursuant to section 667, subdivisions (b) through (i), which constituted serious felony convictions pursuant to section 667, subdivision (a). The information also alleged seven factors in aggravation under California Rules of Court, rule 4.421.[5]

A jury found defendant guilty of criminal threats and found true that he used a knife in the commission of the offense. Defendant waived a jury finding of aggravating factors. In a bifurcated proceeding, the court found true defendant suffered seven prior strike convictions and seven prior serious felony convictions, and found true all seven aggravating factors.

During the trial, defendant had several outbursts. He said "f--- you" to either the prosecutor or the investigating officer while giving them a menacing look. He then said, "You're a piece of shit." This was confirmed by defense counsel, but counsel did not see

---

[4]      Cruz testified that defendant had two knives in his hands.

[5]      All further undesignated rule references are to the California Rules of Court.

the look on defendant's face. The court also made a record noting that defendant was vocal during the trial and that he had tried to communicate with the complaining witness by waiving his finger at the complaining witness. The court observed that defendant was addressing his displeasure. The court further noted it was clear defendant was not listening to his counsel and would not let him do his job because he continued to vocalize. The court reporter recorded defendant saying, "You're a lying piece of shit" and "You're lying" to Gutierrez while he testified in court. The court again noted at another side bar that defendant was "completely uncontrollable" and gave orders to the deputy to leave the defendant alone unless it became a security issue.

### C.    Sentencing

On June 29, 2022, defendant was sentenced in case No. MCR073225 to a term of 25 years to life for the criminal threats conviction, plus a one-year term for the knife enhancement and five years for the prior conviction under section 667, subdivision (a). Defendant was also sentenced to 25 years to life in cases Nos. MCR060199, MCR066519, MCR070490 and MCR071907 consecutively. Defendant's total aggregate term was 125 years to life plus six years in state prison.

## DISCUSSION

## I.    Substantial Evidence Supports Defendant's Criminal Threats Conviction

Defendant contends there is insufficient evidence that the victim was in sustained fear in order to support his conviction for criminal threats. Defendant argues that although evidence shows Gutierrez was concerned about defendant's behavior, Gutierrez did not in reality believe that defendant would kill him or inflict great bodily injury. Defendant contends there is no substantial evidence that the victim was in a sustained period of fear that was not fleeting or transitory. The People disagree arguing substantial evidence supports the element of sustained fear. We agree with the People and reject defendant's claim.

*A.     Standard of Review*

On a challenge to the sufficiency of the evidence to support a criminal conviction, the reviewing court reviews the record "to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 (*Rodriguez*); *People v. Mincey* (1992) 2 Cal.4th 408, 432; *People v. Hayes* (1990) 52 Cal.3d 577, 631.)  "In making this determination, the reviewing court must consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment."  (*Mincey*, at p. 432; *Hayes*, at p. 631; *People v. Johnson* (1980) 26 Cal.3d 557, 576.)  Appellate courts must not reweigh evidence or reevaluate witness credibility.  (*People v. Young* (2005) 34 Cal.4th 1149, 1181; *People v. D'Arcy* (2010) 48 Cal.4th 257, 293.)  "The existence of a mere conflict in the evidence provides no basis for reversal" and is resolved in favor of the judgment. (*People v. Latham* (2012) 203 Cal.App.4th 319, 334 (*Latham*); *People v. Galvez* (2011) 195 Cal.App.4th 1253, 1259.)

"Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it."  (*People v. Redmond* (1969) 71 Cal.2d 745, 755; *People v. Daugherty* (1953) 40 Cal.2d 876, 885; *People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)  Thus, the appellate court must affirm the judgment if any reasonable jury could have found sufficient evidence to sustain the conviction, even if the court might have reached a different conclusion if it had been the initial factfinder.  (*People v. Latham*, *supra*, 203 Cal.App.4th at p. 334.)

*B.     Relevant Law*

The following five elements must be proven to establish a criminal threat in violation of section 422: "(1) that the defendant 'willfully threaten[ed] to commit a crime

which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227– 228; see *People v. Bolin* (1998) 18 Cal.4th 297, 337–340 & fn. 13.)

For purposes of criminal threats, " 'sustained fear' " means " 'a period of time that extends beyond what is momentary, fleeting, or transitory.' " (*People v. Brugman* (2021) 62 Cal.App.5th 608, 634 (*Brugman*), citing *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 (*Allen*); *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349; *People v. Wilson* (2015) 234 Cal.App.4th 193, 201.)  A victim can experience sustained fear even if the fear exists only during the incident itself, as long as the fear during the incident is more than "momentary, fleeting, or transitory." (*Allen*, at p. 1156.)  " ' "Fifteen minutes of fear … is more than sufficient to constitute 'sustained' fear for purposes of … section 422." ' " (*Brugman*, at p. 634.)  "Indeed, '[w]hen one believes he [or she] is about to die, a minute is longer than "momentary, fleeting, or transitory." ' " (*Ibid*.; *Fierro*, at p. 1349 [defendant displayed a weapon and stated, " 'I will kill you … right now' "].)  "The victim's knowledge of [the] defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear." (*Allen*, at p. 1156.)

### C. Analysis

We disagree with defendant's claim that there is insufficient evidence that the victim was in sustained fear to support his criminal threats conviction. A review of the record demonstrates substantial evidence exists to support the jury's determination that Gutierrez was reasonably in sustained fear for his own safety and the safety of Cruz. (See *Rodriguez*, *supra*, 20 Cal.4th at p. 11.)

The Second District Court of Appeal, Division three, addressed a factually similar scenario where the defendant claimed there was insufficient evidence of sustained fear to support the criminal threats conviction. In *Allen*, the defendant was the victim's daughter's former boyfriend and the victim had called the police on the defendant on prior occasions. (*Allen*, *supra*, 33 Cal.App.4th at p. 1155.) The record showed the victim had seen the defendant looking into her house on prior occasions, she saw him around her neighborhood earlier that day, and then the defendant returned and stopped by her back door and told her " 'I'm gonna kill you. I'm gonna kill you and your daughter.' " (*Ibid*.) As the defendant spoke, he pulled out a gun and pointed it at the victim who started shaking and felt fear. (*Id*. at p. 1156.) She called the police who arrived and located the defendant in about 15 minutes. (*Ibid*.) The court found the victim's knowledge of the defendant's prior conduct relevant in establishing that the victim was in a state of sustained fear. (*Ibid*.) It concluded that "[f]ifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and her daughter, is more than sufficient to constitute 'sustained' fear for purposes of this element of section 422." (*Ibid*.)

Like in *Allen*, the victim knew defendant and knew that he was dangerous. Defendant had a history of violence, including murder, and had held a knife to the victim's throat on two previous occasions. Gutierrez testified that he was afraid for his life. He ordered Cruz out of the house because he was afraid the defendant would stab him, and followed Cruz outside so that he would not get stabbed either.

9.

We reject defendant's argument that Gutierrez was not in sustained fear because he testified he was no longer in fear once he was outside of the house. Defendant points to events after the fear-triggering incident when Gutierrez was outside and the police were on their way. This same type of argument was rejected in *Brugman*. (See *Brugman*, *supra*, 62 Cal.App.5th at p. 634.) *Brugman* involved corporal injury in a domestic relationship and the defendant pointing a gun to the back of the victim's head telling her he was going to smoke her. (*Id*. at p. 628.) The defendant in *Brugman* argued that the victim did not experience sustained fear because the victim continued to live with the defendant after the incident, and there was no evidence the victim left the apartment immediately after the incident out of fear. (*Brugman*, at p. 634.) The court explained that the defendant's argument was "flawed because a victim can experience sustained fear even if the fear exists only during the incident itself, as long as the fear during the incident is more than 'momentary, fleeting, or transitory.' " (*Ibid*.) In *Brugman*, the victim testified she was scared during the incident and did not run away because she was afraid. (*Ibid*.) The court concluded that a "reasonable juror could conclude that while enduring this extended scenario, [the victim] did not merely experience fear that was 'momentary, fleeting, or transitory' [citation], but instead experienced sustained fear." (*Ibid*.) Here as well, defendant grabbed a knife and came towards Gutierrez while telling him he was going to kill him. The record shows that Gutierrez felt the threat was real and was afraid the defendant would stab him. That was when he and Cruz left the house and Gutierrez called the police. Gutierrez believed that if he had not left the house and called the police, he would have been a victim of defendant's actions that night.

Although defendant argues the period of time that Gutierrez was in fear "did not spread over a lengthy period" of time, " '[w]hen one believes he … is about to die, a minute is longer than "momentary, fleeting, or transitory." ' " (*Brugman*, *supra*, 62 Cal.App.5th at p. 634; *People v. Fierro*, *supra*, 180 Cal.App.4th at p. 1349 [the defendant displayed a weapon and stated, " 'I will kill you … right now' "].) In *Fierro*,

10.

the court explained that "a person who hears someone say, 'I will kill you … right now,' coupled with seeing a weapon, is quite justified" in remaining scared, even if it is only during the minute he heard the threat. (*Fierro*, at p. 1349.) Similarly, here, defendant threatened Gutierrez by telling him he was going to kill him while coming towards Gutierrez with a knife. Gutierrez was justified in being scared, even if it was only during the time period that he was in the house, getting himself and Cruz out of the house, and calling the police.

We disagree with defendant that his statements were merely angry ravings or utterances. Defendant cites to *People v. Felix* (2001) 92 Cal.App.4th 905 which involves a very different scenario. In *Felix*, the defendant privately expressed fantasies of killing to a psychotherapist. (*Id*. at p. 914.) On the other hand, here, defendant was not fantasizing about killing Gutierrez, but physically came at Gutierrez in person with a knife telling him he wanted to kill him. Moreover, even considering defendant's argument that evidence could be viewed as a sudden outburst from defendant, the judgment will not be overturned unless it "clearly appear[s] that upon no hypothesis whatever is there sufficient substantial evidence to support it." (See *People v. Redmond*, *supra*, 71 Cal.2d at p. 755; *People v. Daugherty*, *supra*, 40 Cal.2d at p. 885.)

Accordingly, we conclude there is substantial evidence from which a reasonable jury could find defendant guilty of criminal threats beyond a reasonable doubt. (See *Rodriguez*, *supra*, 20 Cal.4th at p. 11; *People v. Mincey*, *supra*, 2 Cal.4th at p. 432; *People v. Hayes*, *supra*, 52 Cal.3d at p. 631.) We reject defendant's first claim.

## II. The Trial Court Did Not Abuse its Discretion When it Denied Defendant's *Romero* Motion and Refused to Reduce His Conviction to a Misdemeanor; Nor Does his Sentence Constitute Cruel and Unusual Punishment

Defendant argues that the trial court abused its discretion when it denied his *Romero* motion and refused to reduce his conviction to a misdemeanor, which he argues resulted in cruel or unusual punishment under the California Constitution. Defendant

further contends the trial court incorrectly calculated his aggregate indeterminate term to be 150 years to life in state prison. The People agree the minute order should be amended to reflect that defendant's aggregate indeterminate sentence is 125 years to life. However, the People disagree with defendant's other contentions and assert that the trial court did not abuse its discretion when it denied both of defendant's requests, and that his sentence does not result in cruel or unusual punishment. We agree the minute order should be modified to reflect defendant's sentence is 125 years to life, but reject defendant's claims that the trial court abused its discretion in denying both his *Romero* motion and motion to reduce his conviction to a misdemeanor under section 17, subdivision (b). We further reject defendant's claim that his sentence amounts to cruel or unusual punishment.

### A.    *Relevant Background*

Defendant filed a motion inviting the court to strike his prior serious felony convictions and five-year enhancement pursuant to *Romero* and section 1385, and to reduce his conviction of criminal threats to a misdemeanor pursuant to section 17, subdivision (b). The trial court filed a tentative ruling denying defendant's motion.

In the tentative ruling, the court began by considering the procedural history of the case and defendant's prior convictions, which included two murder convictions and three robbery convictions. It noted the following special allegations were found true: (1) that the charged offense involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness (rule 4.421(a)); (2) defendant was armed with or used a weapon at the time of the commission of the crime (rule 4.421(a)(2)); (3) defendant engaged in violent conduct that indicates a serious danger to society (rule 4.421(b)(1)); (4) defendant's prior convictions as an adult or sustained petition in juvenile delinquency proceedings are numerous or of increasing seriousness (rule 4.421(b)(2)); (5) defendant served a prior term in prison or county jail

under section 1170, subdivision (h) (rule 4.421(b)(3)); and (6) defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory (rule 4.421(b)(5)). In the tentative ruling, the court highlighted specific facts underlying the criminal threats conviction, including that defendant emerged from the kitchen with a knife, told the victim he was a "piece of shit" and was going to kill him. Defendant followed the victim and his friend out of the house with the knife, telling him again that he would kill him.

The court determined defendant was not a proper candidate for a *Romero*/ section 1385 motion after considering the " 'constitutional rights of the defendant' " as well as the " 'interests of society.' " (See *Romero*, *supra*, 13 Cal.4th at pp. 530–531.) Citing *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*), the court considered the question of whether defendant fell " 'outside the spirit' " of the "Three Strikes" law by considering "defendant's background, character and prospects." (See *id*. at p. 160, fn. 5.) The court noted defendant "fits squarely within the spirit of the [T]hree [S]trikes law" since he "has hardly stayed out of trouble since his prior strikes and lengthy prison sentence (for, among other things, two murder convictions)." The court further noted that throughout the trial, defendant was observed wagging his finger when the victim testified, which could have reasonably been taken as threatening and intimidating the victim, and was swearing and name calling to the investigating officer and Deputy District Attorney. Considering defendant's past criminal convictions and behavior at court, the court explained defendant was "entitled to no positive considerations under the category "character." There was no information from the defense suggesting defendant's prospects for the future, or any mental health issues, take him outside the three strikes scheme. As such, the *Romero* motion was denied.

For the motion to reduce the conviction to a misdemeanor under section 17, subdivision (b), the court looked to *People v. Tran* (2015) 242 Cal.App.4th 877, 886 (*Tran*) and concluded "under no circumstance can the court properly find 'rehabilitation

13.

… does not require, or would be adversely affected by, incarceration in the state prison as a felon.' "  The court based its conclusion on the fact that defendant "has spent much of his adult life in prison and has not made good use of his time in society when out of custody."  It also found there is no evidence defendant was entitled to more lenient treatment by reducing the charge to a misdemeanor and that defendant falls in the class of criminals intended to be subject to felony punishment.  The court again noted defendant's outbursts and actions in court did not help his case.  The motion to reduce defendant's conviction to a misdemeanor was denied.

At the sentencing hearing, the court adopted its tentative ruling as the order of the court, denying both the *Romero*/section 1385 motion and the section 17, subdivision (b) motion.

### B. Standard of Review and Relevant Law

The "deferential abuse of discretion" standard guides appellate courts when reviewing a trial court's decision to deny a *Romero* motion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 371, 374–375 (*Carmony*).)  Only when a trial court's decision is "so irrational or arbitrary that no reasonable person could agree with it" can the decision be considered an abuse of discretion.  (*Id*. at p. 377.)  The appealing party bears the burden of showing that denial was "clearly … irrational or arbitrary."  (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978 (*Alvarez*); *Carmony,* at p. 376.)  Without such a showing, the trial court is presumed to have acted within legitimate sentencing objectives.  (*Alvarez*, at pp. 977–978; *Carmony*, at p. 376–377.)  The mere fact that " 'reasonable people might disagree' " is insufficient for an appellate court to overturn a trial court's decision to deny a *Romero* motion.  (*Alvarez*, at p. 978; *Carmony*, at p. 377.)  Only when a trial court's ruling lies " 'outside the bounds of reason' under the applicable law and the relevant facts" can the ruling be considered an abuse of discretion.

(*Williams*, *supra*, 17 Cal.4th at p. 162; see *People v. Garcia* (1999) 20 Cal.4th 490, 503; *People v. Strong* (2001) 87 Cal.App.4th 328, 336 (*Strong*).)

Trial courts have discretion to strike priors or dismiss an enhancement so long as doing so is in the "furtherance of justice." (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529–530.) In determining whether striking a strike or dismissing an enhancement is appropriate, the trial court must give "preponderant" weight to the specific circumstances of the defendant's present and past offenses, and his particular background, character, and prospects. (*Williams*, *supra*, 17 Cal.4th at p. 161.) The trial court must consider all relevant factors in deciding whether to grant a *Romero* motion. (*Carmony*, *supra*, 33 Cal.4th at p. 379.) Focusing on one factor to the exclusion of all others may constitute error. (*Ibid.*)

Concerning the Three Strikes law in particular, a trial court should grant a *Romero* motion if, "in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant [is] deemed outside the … spirit [of the Three Strikes law], in whole or in part." (*Williams*, *supra*, 17 Cal.4th at p. 161.) The Three Strikes law requires a trial court to justify its decision when striking a strike. (*Carmony*, *supra*, 33 Cal.4th at p. 377.) However, if a trial court declines to strike a strike, "the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Id*. at p. 378.) Only in limited circumstances will a trial court have abused its discretion by failing to strike a strike: when the trial court was unaware of its discretion to strike the strike, when the trial court considers impermissible factors in its decision, or when the trial court fails to consider relevant factors. (*Ibid*.) Because the circumstances of striking a strike are "extraordinary … the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the [T]hree [S]trikes scheme must be even more extraordinary." (*Ibid*.) For these reasons, an appellate court is " ' "neither authorized nor warranted in substituting its judgment for the

15.

judgment of the trial judge." ' " (*Alvarez, supra,* 14 Cal.4th at p. 978; *Carmony,* at p. 377.)

### C. *Analysis*

#### 1. Error in Calculating the Indeterminate Sentence

First, we address the error in calculating defendant's indeterminate sentence. At sentencing, the court imposed a 25 years to life sentence in five separate cases, plus one year for the weapon enhancement and five years for the serious felony conviction enhancement. On the record, the court calculated the aggregate indeterminate term to be 150 years to life in state prison, which is also reflected in the minute order. This appears to be a clerical error since the correctly calculated aggregate term is 125 years to life, which is accurately reflected in the abstract of judgment. "Courts may correct clerical errors at any time, and appellate courts" may order correction of abstracts of judgment that do not accurately reflect the oral judgments of sentencing courts. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Therefore, we order the minute order amended to reflect that defendant's aggregate indeterminate sentence is 125 years to life in state prison.

#### 2. Defendant's Motion to Strike the Prior Strike Convictions and Five-Year Enhancement Under *Romero* and Section 1385

Defendant fails to overcome the strong presumption that in denying the *Romero* motion, defendant's sentence is both rational and proper. (See *Carmony, supra,* 33 Cal.4th at p. 378; *Strong, supra,* 87 Cal.App.4th at pp. 337–338.) Our Supreme Court made it clear that the Three Strikes law establishes a sentencing norm and carefully circumscribes the trial court's power to depart from this norm and requires courts to explicitly justify its decision in doing so. (*Carmony, supra,* 33 Cal.4th at p. 378.) As such, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper. (*Ibid.*) "In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Ibid.*) These include "where the trial court was not 'aware of

16.

its discretion' to dismiss (*People v. Langevin* (1984) 155 Cal.App.3d 520, 524), or where the court considered impermissible factors in declining to dismiss ([*People v.*] *Gillispie* [(1997)] 60 Cal.App.4th [429,] 434)" or where the sentencing norms produce an " ' "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case." (*Ibid.*)  A court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.)  " '[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' " (*Carmony*, at p. 378; *People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Our Supreme Court in *Williams* held that the defendant's conviction for felony driving under the influence, with prior driving under the influence convictions, could not "be deemed outside the spirit of the Three Strikes law" where the defendant had prior serious and violent convictions for attempted robbery and rape.  (*Williams*, *supra*, 17 Cal.4th at pp. 162–163.)  The *Williams* court had also considered that the defendant "did not refrain from criminal activity" during the span between his prior convictions and the present conviction and violated parole.  (*Id.* at p. 163.)  Here as well, defendant has prior serious and violent felony convictions, including murder, and had shown that he has not been able to refrain from criminal activity.

A review of the trial court's lengthy tentative ruling shows the court considered proper factors in denying the *Romero* motion.  (See *Williams*, *supra*, 17 Cal.4th at p. 161.)  The court considered defendant's lengthy criminal history, lack of rehabilitative efforts, and history of reoffending when released from custody.  Defendant's criminal

history consisted of numerous offenses, including two murder convictions and three robbery convictions. The court also considered defendant's character, including his behavior during trial. The court noted defendant appeared to threaten the victim while testifying by wagging his finger at him, and swore at the prosecutor and investigating officer. And there was no evidence to support defendant's proffered explanation that he suffered from mental health issues. Given the court denied defendant's *Romero* motion after careful consideration of defendant's criminal history, and circumstances of his conduct, and finding that defendant fell within the spirit of the Three Strikes law, it cannot be shown the court's decision was arbitrary or irrational. As such, we conclude the trial court did not abuse its discretion in denying defendant's *Romero* motion regarding the prior strike convictions and five-year enhancement.

We disagree with defendant that he falls outside the spirit of the Three Strikes law as explained in *People v. Cluff* (2001) 87 Cal.App.4th 991. In *Cluff*, the defendant was convicted of failing to renew his registration as a sex offender, even though he had continued residing at the same address and had not reoffended. (*Id*. at pp. 999, 1001.) The *Cluff* court held the trial court abused its discretion when it denied defendant's request to dismiss the prior strike convictions because the case involved "the most technical violation of the section 290 registration requirement we have seen," (*id*. at p. 994) without the "intent to deceive or evade law enforcement" (*id*. at p. 1001). Here, defendant's conviction is not a technicality, but another offense committed by threatening to kill another person while holding a knife. We find no similarity to *Cluff*.

Defendant also cites to *Carmony* where the appellate court considered the trial court's reliance in *Cluff* and improper factors in refusing to strike prior convictions as significant in finding the trial court abused its discretion. In *Carmony*, the defendant pled guilty to one count of failure to register and admitted three prior strike convictions. (*Carmony*, *supra*, 33 Cal.4th at p. 372.) The defendant was 40 years old at the time of the offense and had a long history of alcohol and drug abuse and alcohol had contributed

18.

to his prior offenses. (*Ibid*.) Defendant had received written notice of his obligation to register on several occasions, but he continually failed to register as required and was arrested. (*Ibid*.) The trial court denied defendant's motion to dismiss the prior strike convictions due to his lengthy criminal history, numerous parole violations, poor work record and lack of future prospects. (*Id*. at pp. 372–373.) The appellate court held that the trial court abused its discretion because the defendant's failure to register was a passive act and only a technical violation of the law. (*Carmony*, *supra*, 33 Cal.4th at pp. 373–374.) However, the Supreme Court held that considering the defendant's prior record, the trial court did not abuse its discretion when it refused to strike his prior convictions because the defendant's case was "far from extraordinary" and fell within the spirit of the Three Strikes law. (*Id*. at pp. 378–379.) Here, as well, the trial court considered proper factors when it looked at defendant's lengthy criminal history and numerous violations of probation when it denied defendant's request to strike his strike convictions and five-year enhancement.

We are not persuaded by defendant's argument that his age made his sentence unjust. Defendant concedes that age alone is not a sufficient factor to move him outside the spirit of Three Strikes law (see *Strong*, *supra*, 87 Cal.App.4th at p. 345) but argues that at 70 years old, the length of the sentence should be the " 'overarching consideration' " in deciding whether to strike a prior conviction in the avoidance of an unjust sentence. (*People v. Garcia* (1999) 20 Cal.4th 490, 500.) In *Garcia*, our Supreme Court was responding to the Attorney General's "false assumption that striking prior conviction allegations with respect to some, but not all, counts is proper only if the current offenses differ in some way from one another." (*Ibid*.) However, the issue in *Garcia* was not the defendant's age, but whether the trial court has discretion in a Three Strikes case to strike prior conviction allegations on a count-by-count basis, it does not support defendant's argument. (*Id*. at p. 499.)

We also reject defendant's claim that "no reasonable person could agree that the sentence imposed on [him] was just." Defendant relies on *People v. Avila* (2020) 57 Cal.App.5th 1134, 1145 to argue the court abused its discretion in not striking his prior convictions claiming his drug addiction was the basis for his criminal history after 2000, and that the court did not consider or offer any explanation for not striking defendant's four prior drug possession charges. In *Avila*, the defendant's attempted robbery conviction was a nonviolent conviction and his criminal history showed a decrease in seriousness. (*Id*. at pp. 1142–1143.) The defendant had struggled with drug abuse and the record showed he made efforts to address his addiction, but after two car accidents and being laid off from work he relapsed. (*Id*. at p. 1144.) The court also considered the defendant's character, his age, that he tried to remain sober and maintain gainful employment, and that he would likely die in prison. (*Ibid*.) The *Avila* court concluded that under these circumstances, the trial court abused its discretion in denying the *Romero* motion. (*Id*. at p. 1145.)

Here, defendant's offense of criminal threats is also not listed as a violent offense under section 667.5, subdivision (c). However, the *Avila* case is distinguishable in that defendant failed to demonstrate he made efforts to address his drug abuse. Rather, the court noted that defendant "has spent much of his adult life in prison and has not made good use of his time in society when out of custody." Moreover, defendant's behavior during the trial was negative and disruptive, and his criminal history includes violent offenses such as robberies and murder convictions, which places him well within the Three Strikes law, as discussed above.

To the extent that defendant also claims the trial court abused its discretion by not striking his prior drug charges, defendant forfeited this claim by failing to raise it below. (See *Carmony*, *supra*, 33 Cal.4th at p. 374 [the failure to ask the sentencing court to dismiss a prior strike conviction in the interests of justice forfeits the issue on appeal].) Defendant's *Romero* motion asked the court to "strike the prior serious felony

20.

convictions(s) pursuant to [section] 1385 in the furtherance of justice." Since defendant did not request the court to also strike the four drug possession charges, he forfeited his right to raise the issue on appeal. (*Carmony*, at p. 374.)

### 3. Defendant's Section 17, Subdivision (b) Motion

Defendant's claim that the trial court abused its discretion by failing to reduce his criminal threats conviction to a misdemeanor under section 17, subdivision (b) also fails. Section 17, subdivision (b) grants the trial courts discretion to treat a wobbler crime, which is punishable either as a felony or as a misdemeanor, as a misdemeanor. A trial court's reduction of a wobbler offense to a misdemeanor under section 17, subdivision (b) is an act of leniency to which a defendant is not entitled as a matter of right. (*Tran*, *supra*, 242 Cal.App.4th at p. 892.) "[T]he trial court is not required to grant this relief, even upon successful completion of probation." (*Ibid*.) Pertinent factors for the court to consider are "circumstances of the offense, the defendant's appreciation of and attitude toward the offense, and the defendant's character as evidenced by the defendant's behavior and demeanor at the trial." (*People v. Mullins* (2018) 19 Cal.App.5th 594, 611.) The trial court should also consider the defendant's criminal history. (*Alvarez*, *supra*, 14 Cal.4th at p. 979.)

On review, courts apply "the extremely deferential and restrained" abuse of discretion standard. (*Alvarez*, *supra*, 14 Cal.4th at p. 981.) "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers*, *supra*, 69 Cal.App.4th at p. 310.) Because a court has broad discretion when deciding to reduce a wobbler offense, the court's decision will not be disturbed on appeal unless it is clearly shown to be irrational or arbitrary. (*Tran*, *supra*, 242 Cal.App.4th at p. 887.) " 'Absent such a showing, we presume the court acted to achieve legitimate sentencing objectives.' " (*Ibid*.)

The record shows the trial court considered defendant's past and present behavior when it determined that it would not be a proper exercise of its discretion to reduce

defendant's conviction to a misdemeanor. The court stated that "under no circumstances can the court properly find 'rehabilitation … does not require, or would be adversely affected by, incarceration in the state prison as a felon.' " It noted that defendant had "spent much of his adult life in prison and has not made good use of his time in society when out of custody." Defendant continued to commit offenses and failed on multiple occasions to comply with the terms of probation. The court also took into account defendant's actions and outbursts during the trial. Ultimately, the court determined that felony consequences were appropriate. Thus, the trial court's denial of the motion to reduce the felony conviction to a misdemeanor under section 17, subdivision (b) was supported by the record and we conclude the trial court did not abuse its discretion.

### 4. Cruel or unusual punishment

Defendant claims that his 125 years to life sentence for a conviction of criminal threats and four probation violations amounts to cruel or unusual punishment under the California Constitution. Defendant claims that his sentence is grossly disproportionate to his individual culpability as shown by his age, prior criminality, personal characteristics, and state of mind. Specifically, defendant claims that the consecutive 25 years to life sentences for drug possession offenses was grossly excessive and that the "court's refusal to impose less than a three-strike sentence on the narcotics offenses resulted in an arbitrary, capricious and patently absurd result." We disagree and reject defendant's claim that his 125 years to life sentence amounts to cruel or unusual punishment under the California Constitution.

The determination of whether a punishment is cruel or unusual is a question of law for the appellate court, "but the underlying disputed facts must be viewed in the light most favorable to the judgment." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496.) "Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of

22.

practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment." (*In re Lynch* (1972) 8 Cal.3d 410, 423–424 (*Lynch*), superseded by statute on other grounds as explained in *In re Palmer* (2021) 10 Cal.5th 959, 974–975; *People v. Kun* (1987) 195 Cal.App.3d 370, 374.) "Statutes prescribing punishments, as with other statutes, must be upheld unless they are clearly and unmistakably shown to be unconstitutional." (*People v. Almodovar* (1987) 190 Cal.App.3d 732, 739.) "Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." (*Martinez*, at p. 494.)

Article I, section 17 of the California Constitution states that "[c]ruel or unusual punishment may not be inflicted or excessive fines imposed." This constitutional proscription is violated when a penalty is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Lynch*, *supra*, 8 Cal.3d at p. 424.) The California Supreme Court devised a three-prong test for assessing whether punishment is cruel or unusual: (1) courts should consider "the nature of the offense and/or the offender" (*Lynch*, *supra*, 8 Cal.3d at p. 425); (2) compare the punishment to other punishments imposed by the same jurisdiction for more serious offenses (*id*. at p. 426); and (3) compare the punishment to other punishments imposed by other jurisdictions for the same offense (*id*. at p. 427). The weight afforded to each prong may vary by case, and a defendant need not establish the requisite disproportionality in all three respects. (*People v. Dillon* (1983) 34 Cal.3d 441, 479, 487, fn. 38, superseded by statute on other grounds as explained in *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 228.) A defendant bears the burden of establishing that the punishment prescribed for his offense is unconstitutional. (*People v. Wingo*

(1975) 14 Cal.3d 169, 174, 183, superseded by statute on other grounds as explained in *In re Palmer* (2019) 33 Cal.App.5th 1199, 1206, fn. 6; *People v. King* (1993) 16 Cal.App.4th 567, 572.)

The record shows the trial court properly considered the nature of the offense and offender, including the seriousness of the offense and the presence of violence, victims and aggravating circumstances. (See *Lynch*, *supra*, 8 Cal.3d at pp. 425–426.) Defendant threatened to kill his nephew while holding a knife and proceeded to follow him outside telling him again that he is going to kill him. Defendant had held a knife to his nephew's throat on two prior occasions and it was found true that he had seven prior strike convictions, including two murder convictions and three robbery convictions. The court also found the following special allegations to be true: (1) the charged offense "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness"; (2) defendant was armed with or used a weapon at the time of the commission of the crime; (3) defendant engaged in violent conduct that indicates a serious danger to society; (4) defendant's prior convictions as an adult or sustained petition in juvenile delinquency proceedings are numerous or of increasing seriousness; (5) defendant has served a prior term in prison or county jail under section 1170, subdivision (h); and (6) defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory.

Although defendant complains that his drug convictions are minor, each drug conviction had alleged eight prior serious convictions, which include two murder convictions and three robberies. The court noted defendant "has hardly stayed out of trouble since his prior strikes and lengthy prison sentence." The trial court found defendant's character was "entitled to no positive considerations" based on his threatening and disruptive behavior throughout the trial. The court also noted that although defendant had "spent much of his life in prison," he has not made good use of his time in society when out of custody.

24.

Defendant failed to offer any argument or analysis under the second or third *Lynch* prongs comparing the punishment to other punishments imposed by the same jurisdiction for more serious offenses or to other punishments imposed by other jurisdictions for the same offense. (See *Lynch*, *supra*, 8 Cal.3d at pp. 426–427). As such, defendant fails to meet his burden of showing that the punishment prescribed for his offense is unconstitutional and his claim of cruel or unusual punishment fails. (See *People v. Wingo*, *supra*, 14 Cal.3d at pp. 174, 183; *People v. King*, *supra*, 16 Cal.App.4th at p. 572.)

## DISPOSITION

We order the trial court to modify the minute order dated June 29, 2022, to reflect that defendant's aggregate indeterminate term is 125 years to life in state prison. In all other respects, we affirm the judgment.


                                          DE SANTOS, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


SNAUFFER, J.

25.